The Safe Deposit & Trust Company of Pittsburg (formerly The Safe Deposit Company of Pittsburg), a Corporation under the Laws of the State of Pennsylvania, Trustee, Appellant, *v.* The Columbia Iron & Steel Company, also a Corporation.

*Mechanic's lien—Date of commencement of work—Evidence—Judgment.*

A mechanic's lien is a claim only, and its averments and dates establish nothing. A judgment obtained upon it is conclusive against the owner, but he cannot waive the right of creditors to insist that the lien is invalid. As to them it is a judgment from its date only, and not even prima facie evidence of the relation of the lien to the commencement of the work on the ground.

A finding by an auditor as to the time when the work is completed will not be sustained where such finding is based merely upon an averment in a mechanic's lien filed for the work.

*Mechanic's lien—Description of property.*

A description of the buildings and plant of a steel company in a mechanic's lien filed not against the buildings alone but against the plant as a whole, for work done on the foundations, filed at a time when the buildings were not completed, is sufficient where the land upon which the buildings were erected is described by adjoiners, and the length and width of the buildings, the material of which they are built, and the objects for which they are to be used are stated.

Argued May 11, 1896. Appeal, No. 5, Jan. T., 1896, by plaintiff, from order of C. P. Fayette Co., March Term, 1894, No. 27, overruling exception to auditor's report. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Exceptions to auditor's report.

The auditor D. M. Hertzog, Esq., reported:

1. That in the spring of 1886, The Columbia Iron & Steel Company, a corporation under the laws of the commonwealth of Pennsylvania, began to make preparations to erect a steel plant on a tract of land containing eleven acres and seventy-two perches, situate partly in the borough of Uniontown and partly in North Union township, Fayette county, Pa.

2. That in pursuance of said preparations, the said company entered into a contract in writing with John Huckestein and Henry Huckestein, copartners as Huckestein & Co., of Allegheny City, Pa., by which the said Huckestein & Co. agreed, " as fast as required by E. M. Butz, architect, to well and sufficiently erect and finish all the excavation, concrete, stone and brick work required in the foundation for the buildings and machinery for the new steel plant and rolling mills, . . . . all agreeably to such drawings as may be hereafter furnished and the specifications hereto annexed within the time aforesaid."

3. That said contract was signed on May 3, 1886, and work begun on the said tract of land by said Huckestein & Co., in pursuance of said contract, on June 29, 1886, and finished December 13, 1886..

4. That the building for which said excavations were to be made and foundations erected consisted of two buildings, to wit: (*a*) The main or mill building; (*b*) the boiler house.

5. (*a*) That the main building was large, being six hundred and thirty-one feet in its entire length, and of irregular shape, varying in width from about sixty-four feet to about one hundred and ten feet.

6. That at the upper end of this building were erected two cupolas, then passing down through the building in order there were the following structures requiring excavations and foundations: Two converters and two hydraulic cranes, casting pit,

four heating furnaces and two hydraulic cranes, soaking pit, large rolling mill and two hydraulic cranes, a large pair of shears and two hydraulic cranes, four heating furnaces and hydraulic machinery for operating mills, one large and one small rolling mill, hot saw for sawing metal. Adjacent to the location of the last mentioned mills, extending at right angles from the side of the main building, are two rooms in which are erected the large engines for operating the machinery. All these apartments including the engine rooms are under one roof. The roof and sides were of corrugated iron, and the framework of the superstructure of the entire buildings, as originally constructed, was of iron. To support this superstructure, a series of stone or part stone and part brick piers were built. In addition to these, were minor matters also requiring more or less excavating or building of foundations.

7. (b) The boiler house was an oblong building, located parallel with the center of the main building and at a distance of about sixty feet from the eastern side of the principal portion of the main building. This building is three hundred and fifteen feet long by thirty-six feet wide in the main part with a small L extension at or near the upper end. In the upper end of this building were two engines and fans for furnishing air for converters and cupolas and also hydraulic machinery. In the other part of the building a large number of boilers are located for generating the steam used in the engines in the main building.

8. The main building and boiler house are connected by two steam pipes, one at the lower end and the other near the center of the boiler house, and one cold air pipe near the upper end of boiler house, all overhead. There is also a water pipe underground from the hydraulic machinery in the upper end of boiler house to the machinery in the main building, operated by hydraulic power; also an underground connection by a pipe originally laid for carrying natural gas.

9. The machinery and apparatus in the boiler house are essential to the operation of the machinery in the main building, and one department would be inoperative and useless for the purpose for which it was built without the other.

10. An addition to the eastern side of the main building was erected for another furnace and soaking pit in 1887, so as to

occupy part of the space between that building and the boiler house. There was also a wooden extension added to lower end of the main building, on neither of which additions was any work done by Huckestein & Co.

The remainder of the eleven acres and seventy-two perches, with the exception of a small portion at the lower end, is occupied by the company, in roadways, railroad tracks, storage yards for raw and finished material, a large reservoir for storing water for use in boilers and hydraulic machinery, office building, scales, storage buildings and the like, so that the whole of the building and appurtenances form together a "steel plant."

11. It was for excavating and building foundations for the various departments in the main and boiler buildings above described that the contract with Huckestein & Co. was entered into as aforesaid.

12. The consideration to be paid by the C. I. & S. Co. for this work was to be by the cubic yard for excavating; stonework per perch, and brickwork by the thousand brick.

"The contractor at his own proper cost and expense is to provide all manner of materials and labor, scaffolding implements, moulds, freight and cartage of every description, for the due performance of the several erections."

13. The Huckesteins completed their contract, and the company failed to pay them in full, and on June 9, 1887, at No. 979 of mechanics' liens, they entered a mechanic's lien against the "buildings comprising the plant and buildings of an iron and steel rolling mill," etc.

14. On this mechanic's lien they issued a scire facias to No. 301, March term, 1892, in the court of common pleas of Fayette county, and on March 30, 1892, took judgment thereon by agreement for $12,000, with interest from December 1, 1891, payable annually; and on March 30, 1892, Huckestein & Co. assigned this judgment to Stolzenbach and Pfiel.

15. That on April 29, 1889, a mortgage was given by the Columbia Iron & Steel Company to The Safe Deposit & Trust Company, of Pittsburg, also a corporation under the laws of Pennsylvania, in the sum of $150,000, in trust, to secure certain bonds issued by said steel company. This mortgage was duly executed and delivered to said trust company, and recorded in Fayette county on the 30th day of April, 1889, in

mortgage book No. 13, page 276; that a sci. fa. was issued on this mortgage on November 7, 1893, to No. 293, December term, 1893, on which judgment was recovered in the sum of $169,804.21, with interest from December 1, 1893; that a lev. fa. was issued on this judgment to No. 27 March term, 1894, on which the entire plant aforesaid of the steel company was sold for $21,000, and the said The Safe Deposit & Trust Company of Pittsburg became the purchaser. Notice was given to the sheriff, by the purchaser, to pay into court $12,500 of the purchase money, and that is the sum now for distribution by the auditor.

The only contestants for this fund are the assignees of the Huckestein lien and The Safe Deposit & Trust Company of Pittsburg, the latter claiming upon the mortgage aforesaid and that the lien upon which Stolzenbach and Pfiel claim is defective and invalid for two reasons, to wit: (*a*) That it was not entered within six months from the completion of the contract; (*b*) That the description of the building is insufficient.

Upon these questions the auditor finds the following facts:

The sixth paragraph of the lien as filed is as follows:

" And said claimants hereto annex a bill of particulars, showing the particular items, amounts and dates when said materials were furnished, and work and labor done, which bill of particulars is made part of this claim. The first of which was done and furnished 29th June, 1886, and the work completed on the 13th day of December, A. D. 1886."

Mr. John Huckestein testifies that the material was furnished and work all done under one contract which was in writing.

The bill of particulars is headed, " For work done and materials furnished in the excavation, grading, concrete work and brick and stone masonry . . . . said work and materials having been done and furnished under an agreement with the said Columbia Iron & Steel Company, a copy of which said agreement is hereto attached."

The only copy of agreement attached to this bill is the contract originally made with Huckestein & Co.

The items of the bill of particulars appear in groups; (1) those pertaining to excavating; (2) concrete work; (3) brick and stone foundations; (4) group of items for extra work on "extra large stone blocks " and other matters; (5) brickwork.

All these groups of items appear without dates. Then follows a list of items beginning September 23, and extending to December 13, inclusive, and headed "Sunday time, work and materials."

It is argued by counsel for The Safe Deposit & Trust Co. that this latter group of items must be for extra work and material, otherwise they would not have been so particularly specified, and further for the reason that they are not mentioned in the contract.

The evidence offered as to when the contract was completed is very meager, but the lien as filed states that it was not completed until December 13, 1886, and in the absence of any evidence to the contrary, this is conclusive, and the auditor therefore finds as facts: (*c*) that the work under the original contract was completed by Huckestein & Co. on December 13, 1886; (*d*) that whatever extra work was done by said Huckestein & Co. was done by them while their work under the original contract was still in progress and unfinished; (*e*) that the lien was filed by said Huckestein & Co. on June 9, 1887, and hence within six months from completion of work under the contract on which they claim.

Was the description of the buildings, as set forth in the lien filed, sufficient? Paragraphs first and second of the lien are as follows:

(1) "Huckestein & Co., above named claimants, file this mechanic's lien against the buildings hereinafter described, and so much of the ground covered by the same and immediately adjacent thereto and belonging to the owner of the buildings, as may be necessary for the ordinary and useful purposes of said buildings, comprising the plant and buildings of an iron and steel rolling mill, &c."

(2) "The amount claimed to be due is seventeen thousand three hundred and eighty-eight $\frac{16}{100}$ dollars for balance due for stone and brick and excavation made under contract hereto attached, done and finished within six months past, for and about the erection and construction of the buildings hereinafter described, to wit: The building and plant of the iron and steel works owned and constructed by defendants."

The following is the last paragraph:

"Erected and built upon and to be used as a steel and iron

works upon all that certain lot or piece of ground situate partly in Union borough and partly in North Union township, Fayette county, Pennsylvania, adjoining lands of Mary Ann Lenox, lands of John Lenox, lands of Mrs. Jane Kerr and others, containing eleven acres and seventy-two perches, on which is erected a large building, equipped with machinery, &c., being defendants' plant for the manufacture of iron and steel."

Attached to the lien is a rough pen sketch, showing in outline a draft of the "mill building and boiler and engine house," not drawn to any scale, but designating in figures the dimensions of the two respective buildings ; also locating the foundations and giving dimensions of the two large engines, and blooming mill in main building, and giving location of cupolas. In like manner the location of "blowing engines" and boilers are given in the boiler house.

The following description of buildings is given on the bill of particulars attached to the lien :

" The said mill building and boiler and engine house are situated on the property or grounds of the said Columbia Iron and Steel Company in the —— ward of Uniontown, Fayette Co., Penna., and are iron superstructures—the mill building being about 515 feet long by 110 feet wide for 260 feet of its length, and 64 feet wide for the remaining portion of its length. The boiler and engine house is adjacent to the mill building, about 50 feet distant therefrom, and is 315 feet long by 36 feet in width."

The figures on the sketch above mentioned, indicating the different dimensions of the respective buildings, correspond with the dimensions given in this description.

In the sixth paragraph of the lien proper the bill of particulars is referred to as follows :

" Said claimants hereto annex a bill of particulars, showing the particular items, amounts and dates, when said materials were furnished, and work and labor done, which bill of particulars is made part of this claim."

The sketch attached to the lien is not referred to in the lien itself.

The bill of particulars being referred to in the claim and specifically made part of it, and the rough sketch being attached on which the figures appear corresponding with those given in

the description on the bill, the auditor is of the opinion that all the references to the buildings should be construed together in arriving at the real description intended. And while all these parts construed together are somewhat unsatisfactory, yet we think there is " enough in the description of the situation and other peculiarities of the building to identify it," and this, according to the rule laid down in McClintock v. Rush, 63 Pa. 205, is sufficient.

It is further said in the same case that " certainty to a common intent is the rule." And also that " It has been more than once said we must not be hypercritical when scanning this species of lien and estimating its sufficiency." See also Kennedy et al. v. House, 41 Pa. 41.

In Linden Steel Co. v. Refining Co., 138 Pa., Mr. Justice CLARK in delivering the opinion of the court, says, on page 18, " The building or structure against which this lien was entered was an oil refinery, which is so peculiar in its construction that the ordinary forms or methods of description are inapplicable. A description of an oil refinery by ' the size and number of its stories ' would be absurd and wholly inadequate."

The same might be as well said of the description of an iron and steel plant.

The auditor finds finally, as matter of fact, that all the buildings erected by Columbia Iron and Steel Company with which this claim is connected were completed in 1887, two years, or nearly so, before the mortgage was recorded or given under which claim is here made. There is no dispute as to the work having been properly done and the claim made under the act of 1845, it appearing upon its face to be under a contract in writing. As between the two claimants, therefore, upon Hahn's Appeal, 39 Pa. 413, and the cases above referred to, the auditor, after deducting costs of this audit, distributes the fund to the mechanic's lien.

A question was raised, also, that extras were not subject to a mechanic's lien where the claim is made under a contract. But under the facts already found they are properly included in this lien: Parrish's Appeal, 83 Pa. 111, and Rush v. Able, 90 Pa. 153.

Exceptions to the auditor's report were overruled by POR-

TER, J., of the 5th judicial district, specially presiding, who filed the following opinion:

The exceptions to the report of the auditor, filed on behalf of the plaintiff, raise two questions, viz: 1st. Was the lien of Huckestein filed within six months after the completion of the work done under the contract attached to the lien as filed on June 9, 1887? 2d. Was the description of the buildings and premises set forth in the lien sufficient to properly identify the property and give notice to other parties dealing with the owner?

In regard to the first question, the lien was filed on June 9, 1887, and states upon its face that the work was done under the contract, and was commenced on June 29, 1886, and finished on December 13, 1886. No motion has been made to strike this lien off. It is contended upon the part of the plaintiff in this proceeding, that all the work done under the contract is embraced in the items which are given without date in the bill of particulars, which is attached to the lien, and that this work was finished before any of the items (the dates of which are given) were furnished. That the items which have dates are all for extra work. The contract requires Huckestein to "Erect and finish all the excavation, concrete, stone and brick work required in the foundations for the buildings and machinery for the new steel plant and rolling mills . . . . all agreeably to such drawings as may be hereafter furnished." Under the terms of the contract, the Columbia Iron & Steel Company had the right to change the plans and specifications and require the contractor to do the work in accordance with such changes. One of the items charged on December 13, 1886, is for " Cutting one inch off bearing block of 28"×48" engine." This is for work done on the top stone of the foundation, and is manifestly for work done within the contract, and which the steel company had a right to change and require to be done to their satisfaction. But the lien expressly states when the work under the contract was completed; and in the absence of any motion to strike off and any evidence to impeach, we must hold the lien in this respect valid. The question of the sufficiency of the description of the buildings contained in the lien is not without difficulty, which proper care in the preparation of the lien would have avoided.

The lien is filed against the buildings and plant of the steel

company, "comprising the plant and buildings of an iron and steel rolling mill." The land upon which the buildings are located is fully and, it was conceded upon the argument, properly described in the lien, but the only attempt in the lien proper to describe the buildings is in these words, "On which is erected a large building equipped with machinery, &c., being defendant's plant for the manufacture of iron and steel." We are of opinion that this standing alone would not be sufficient, but the lien refers to the bill of particulars and makes the same a part of the claim. If the lien had been filed against the large building alone and not against the plant as a whole, the inclusion in the bill of particulars of items for work alone on the boiler house would not be enough to save the lien of the mechanic as to those items : Bevan v. Thackara, 143 Pa. 182. In the present case the lien was filed against the buildings and plant of the steel company, the land was properly described and the bill of particulars was referred to and made a part of the lien.

Upon the bill of particulars there appears a description of the main mill buildings and the boiler house, giving the material of which they were constructed and the dimensions of the buildings respectively. At the time the lien was filed the construction of the plant had not been completed. Other buildings were erected upon the land in 1887. It does not satisfactorily appear in evidence that any buildings other than the main mill and boiler house had even been commenced at the time of the filing of the mechanic's lien in question. At the time the lien was filed the machinery for the main building and the boiler house was not in place although much of it was upon the grounds. Huckestein had completed his contract for the foundations of the main building and the boiler house, and his six months for filing a lien had almost expired. The iron superstructures of those buildings had been erected and the construction of the plant had been carried forward until the machinery was upon the ground. The description of the plant in its unfinished condition was somewhat difficult. If the description of the buildings contained in the bill of particulars is of any avail it is as full as could have been given, except that it does not state the height of the buildings. The building was a rolling mill, and such erections are usually but one story high. To describe such a building as a rolling mill, the superstructure of

which is of iron, is ordinarily sufficient. Almost two years after the filing of the mechanic's lien in question, the mortgage, under which the mortgagee claims adversely to the lien, was executed and recorded. Considering the state of the record of the lien at that time, we cannot understand how the mortgagee could have failed to identify the property. Taking the whole record, including the bill of particulars, the mortgagee must have recognized the fact that property included in the mortgage was the same referred to in the lien. This we deem sufficient notice and the lien is entitled to the fund for distribution : Linden Steel Co. v. Imperial Refining Co., 138 Pa. 10 ; Linden Steel Co. v. Rough Run Mfg. Co., 158 Pa. 238.

And now, July 23, 1895, the exceptions to the report of the auditor are overruled and said report is confirmed, and it is ordered that the fund in court be paid out in accordance with the schedule of distribution attached to the auditor's report, unless an appeal be taken within three weeks.

*Errors assigned* were in dismissing exceptions to auditor's report.

*S. E. Ewing* and *H. A. Miller*, with them *J. M. Oglevee*, for appellant,—In the distribution of the proceeds of a sheriff's sale, a mechanic's lien, and even the judgment recovered thereon, are res inter alios acta, and not even prima facie evidence : Norris's App., 30 Pa. 122 ; McCay's App., 37 Pa. 125 ; Hahn's App., 39 Pa. 409 ; Dalzell v. Patterson, 6 W. N. C. 493 ; Hills v. Elliott, 16 S. & R. 56.

A mechanics' lien creditor has a lien for six months after he completes his work, but if he wishes to continue his lien any longer he must file a claim therefor sufficient in form and substance under the act of assembly to continue his lien ; and as to other lien creditors, he must prove aliunde that his claim was filed within six months after he completed his work, otherwise his lien was lost.

Even if the claim were evidence, yet we submit that the claim itself does not sufficiently aver that the last work and materials under the contract were done and furnished within six months before the claim was filed : Yearsley v. Flanigen, 22 Pa. 489 ; Wilson v. Forder, 30 Pa. 129 ; Homœopathic Ass'n v. Harrison, 120 Pa. 28 ; Harrison v. Homœopathic Ass'n, 134 Pa. 558.

A mechanic's claim may be filed against the buildings and structures constituting in the whole a refinery, saltworks, or other manufacturing plants; but it must be entered against such structures and buildings erected in connection therewith, and such as are the proper subjects of a mechanic's lien; and they must be so described as to be capable of identification, and so that the description is not such in general form that it might, with equal propriety and accuracy, have been applied to almost any refinery, saltworks or other manufacturing works or plant: Short v. Ames, 121 Pa. 530; Linden Steel Co. v. Refining Co., 138 Pa. 10; Bevan v. Thackara, 143 Pa. 182; Hillary v. Mole, 1 W. N. C. 239.

*A. D. Boyd*, of *Boyd & Umbel*, for appellees.—Materials furnished for a building, though not used in its erection, constitute a lien: Hinchman v. Graham, 2 S. & R. 170; Harker v. Conrad, 12 S. & R. 301; Pres'n Church v. Allison, 10 Pa. 413; White v. Miller, 18 Pa. 52; Odd Fellows Hall v. Masser, 24 Pa. 508.

A mechanic's claim is not a record; the lien docket is the record and it alone affects incumbrances and purchasers: Armstrong v. Hellowell, 35 Pa. 485; O'Brien v. Logan, 9 Pa. 97; Young v. Lyman, 9 Pa. 449.

In a claim for work done, or materials furnished, under an entire contract, but one date need be stated: Fourth Baptist Church v. Trout, 28 Pa. 153. A statement that the work was done within the six months last past is good after the verdict: Shaw v. Barnes, 5 Pa. 18; Bayer v. Reeside, 14 Pa. 167. If there be enough in the description to identify the building, it is sufficient: McClintock v. Rush, 63 Pa. 203; Nelson v. Campbell, 28 Pa. 156; Odd Fellow's Hall v. Masser, 24 Pa. 508; Kennedy v. House, 41 Pa. 39; Lehman v. Thomas, 5 W. & S. 262; Mitchell v. Martin, 3 Pitts. 474; Chambers v. Yarnall, 15 Pa. 265; Goepp v. Gartiser, 35 Pa. 130; Johns v. Bolton, 12 Pa. 339.

Where materials are furnished in pursuance of a contract the limitation begins to run from the date of the last act done in execution of it: Bartlett v. Kingan, 19 Pa. 341; Parrish's App., 83 Pa. 111; Christine v. Manderson, 2 Pa. 363.

The act contemplates that the claimants should prepare their

own papers, and unless the claim be totally defective in giving information for those making search for incumbrance, such as will direct them to the right place, the question would be for the jury, if it was being tried upon a sci. fa: Knabb's App., 10 Pa. 186; Ewing v. Barras, 4 W. & S. 467; Richabaugh v. Dugan, 7 Pa. 394; Linden Steel Co. v. Imperial Refining Co., 138 Pa. 10.

OPINION BY MR. JUSTICE FELL, July 15, 1896:

The controversy in this case arose before the auditor appointed to distribute the fund realized by a sheriff's sale of the real estate of the Columbia Iron & Steel Company. The sale was under proceedings upon a mortgage. The only claimants were the mortgagee and a mechanic's lien creditor. The lien was filed June 9, 1887, and judgment was obtained upon it March 30, 1892. The mortgage was recorded April 30, 1889. The auditor reported that "the evidence as to the time when the contract was completed is very meager, but the lien as filed states that it was not completed until December 13, 1886, and in the absence of any evidence to the contrary this is conclusive." There was in fact no evidence upon the subject, and the finding of the auditor is based entirely upon the statements contained in the lien. Work to the amount of nearly $34,000 was done under a general contract and the claim for work and materials in addition to the contract price was $469. At the end of the lien is a statement: "We began work on the same on the 29th day of June, 1886, and completed the same within the last preceding six months, to wit: on the 13th day of December, 1886." The last date for work done and materials furnished is December 13. Was this sufficient as against a mortgagee whose mortgage had been recorded before judgment was obtained on the mechanic's lien to establish as a fact that the lien was filed in time?

A mechanic's lien is a claim only, and its averments and dates establish nothing. A judgment obtained upon it is of course conclusive against the owner, but he cannot waive the right of creditors to insist that the lien is invalid. As to them it is a judgment from its date only, and not even prima facie evidence of the relation of the lien to the commencement of the work on the ground. In the opinion filed by SHARSWOOD, J., in the

district court of Philadelphia and adopted as the opinion of this court in Norris's Appeal, 30 Pa. 122, he said: "In a contest between mechanics and others for a fund in court, a judgment obtained by a mechanic on a scire facias is as to other claimants res inter alios acta and not even prima facie evidence. As a judgment it ranks merely from its date. To come in as a lien it must be proved so as to entitle it to relate to the commencement of the building." This case was distinctly recognized and followed in McCay's Appeal, 37 Pa. 125, and Hahn's Appeal, 39 Pa. 409. The averments and dates in the lien were not aided by the judgment on the scire facias, and they were not in themselves sufficient to sustain the finding that the lien was filed within six months of the completion of the work.

The finding of the learned auditor as to the time when the work was completed was excepted to, but it does not appear that the question whether the lien was evidence was raised before him. That no injustice may be done an opportunity should be given the appellees to prove if they can such facts as will establish their right to participate in the distribution.

The lien is very inartificially drawn, but it is not fatally defective for want of a proper description of the buildings. The work was for the foundations, and the buildings were not completed at the time when it became necessary to file the lien. The description we think is sufficient to identify the property. The assignments of error relating to this subject are overruled. The remaining assignments are sustained, and the record is remitted to the common pleas in order that further testimony as to the time of the completion of the work may be taken and reported upon by the auditor.