# Schively, Appellant, *v.* Radell.

*Mechanics'. liens—Liens—Dwelling houses—Garages—Adjoining lots —Mechanic's lien Act of June 4, 1901, P. L. 431.*

1. Where the owner of two adjoining lots, both fronting on a public road, erects under a contract a house on one lot, and· under a subsequent contract, a garage on the other lot, said contracts being separate contracts, and treated separately for all purposes, and where the general contractor before the contract for the garage is contemplated, submits to a subcontractor a list of materials to be used in the house, on which the subcontractor gives a lump bid which is accepted, and subsequently the general contractor obtains the contract for the garage and submits another list of materials to the subcontractor for use in the garage at the former prices which is accepted, such sub-

contractor cannot file one lien against both structures erected on the two lots, and secs. 2, 3 and 12 of the mechanic's lien Act of June 4, 1901, P. L. 431, do not support such a lien.

2. There is nothing in sec. 12 of the mechanic's lien Act of June 4, 1901, P. L. 431, which provides either in express terms or by implication that a single claim may be filed against two structures for labor or materials furnished under separate and distinct contracts.

3. The word "plant" is used in sec. 12 of the mechanic's lien act of 1901 in its commercial meaning and is to be taken in its ordinary sense of property owned or used in carrying on some trade or business.

4. The common law having given no lien for labor or materials in the erection of a building, the right to file a claim is entirely statutory, and in order to avail himself of it a party must comply strictly with the terms of the statute conferring the right.

Argued Feb. 1, 1910. Appeal, No. 391, Jan. T., 1909, by plaintiff, from judgment of C. P. Montgomery Co., Oct. T., 1908, No. 17, for defendant non obstante veredicto in case of Samuel L. Schively v. Frederick W. Radell, Owner or Reputed Owner, and Phœnix Wood Working Company, Contractor. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Scire facias sur mechanic's lien. Before WEAND, J.

Judgment by default against Phœnix Wood Working Company, and judgment non obstante veredicto for Frederick W. Radell.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Samuel H. High*, with him *John Faber Miller*, for appellant.—If the understanding between the plaintiff and the company was as plaintiff alleged and testified, and as the jury found, it is sufficiently set forth in the notice: Este v. Penna. R. R. Co., 27 Pa. Superior Ct. 521; Day v. Penna. R. R. Co., 224 Pa. 193; B. & L. Assn. v. Connor, 216 Pa. 543.

*Wayne P. Rambo*, with him *Franklin L. Wright* and *Nicholas H. Larzelere*, for appellee.—The subcontractor must ascertain the contractual relation between the owner and the con-

tractor: Yearsley v. Flanigen, 22 Pa. 489; Brown v. Cowan, 110 Pa. 588; Schroeder v. Galland, 134 Pa. 277; Bevan v. Thackara, 143 Pa. 182.

The importance of the character of the contract between owner and contractor, and the necessity of specification of materials furnished different operations appear in Miller v. Heath, 22 Pa. Superior Ct. 313.

There is no statutory authority for the filing of one lien against two structures erected under different contracts on different lots. A mechanic's lien is purely statutory, and the claimant must show statutory authority for his lien: Knelly v. Horwarth, 208 Pa. 487; Todd v. Gernert, 223 Pa. 103; Wharton v. Investment Co., 180 Pa. 168.

OPINION BY MR. JUSTICE MESTREZAT, March 14, 1910:

This is a scire facias on a mechanic's lien filed by a subcontractor against two structures erected on the liened premises. The material and controlling facts of the case require us to affirm the judgment for defendant entered by the trial court.

Radell, the defendant, became the owner, by deed recorded May 20, 1907, of a lot or piece of ground, "known and designated as lots Nos. eight and thirty-nine on a certain plan of lots of Glenside Highlands," in Abington township, Montgomery county. The two lots were adjacent and were situated at the corner of Roberts and Lynwood avenues in the village of Glenside.

On August 10, 1907, Radell entered into a written contract with the Phœnix Wood Working Company for the erection of a dwelling house "on a certain lot or piece of ground situated at the corner of Roberts and Lynwood Avenues in Glenside, County of Montgomery, and State of Pennsylvania;" and a few days thereafter work was begun on the building. The contract was filed of record in the prothonotary's office of Montgomery county on August 14, 1907.

Radell entered into a written contract, October 10, 1907, with the Phœnix Wood Working Company for the erection of a stone and frame garage on a lot or piece of ground described as in the former contract.

Schively, the plaintiff, furnished lumber to the general contractor for both the residence and the garage, and filed a claim against the two buildings or structures to enforce payment of a balance of $1,387.82, which he alleges to be due and unpaid. The claim is filed against the house and the garage, describing each separately. The lien avers the garage to be forty feet from the house and that "the real estate, upon which the said buildings or structures have been erected, consists of two certain lots or pieces of land, situate in said village of Glenside, in the township of Abington, said county, being lots Nos. 8 and 39 on a plan of lots known as the 'Glenside Highlands,' which plan is recorded in the office for the recording of deeds, in and for said county, in deed book, No. 456, page 500. Said lots taken together are situate on the southeasterly side of Roberts Avenue, at the intersection of the same with the southwesterly side of Lynwood Avenue, with a front on the said side of Roberts Avenue of one hundred and seventy-eight feet ten and three-eighths inches and with a front or depth on the said side of Lynwood Avenue of one hundred and thirty-six feet three and one-fourth inches." The materials were furnished between August 23, 1907, and December 12, 1907. Schively gave a written notice to the owner, March 11, 1908, of his intention to file a lien, and the lien was filed May 14, 1908.

The owner contends that the lumber was furnished by the plaintiff to the contractor under two separate and distinct contracts, under one, for the dwelling house, and under the other, for the garage. The learned court below found this fact in accordance with the owner's contention. The plaintiff denies there were two contracts under which the lumber was furnished to the contractor, and maintains that "there was but one understanding and that all the materials whether for the house or the garage were furnished in pursuance of it." Of course, if this was an open question and there was testimony to support the contention on both sides, the question should be submitted for the determination of a jury. We think, however, that under the uncontradicted evidence the owner's contention must be sustained, and that if the question had

been submitted to a jury the court could not have permitted a different finding. The plaintiff's own testimony conclusively shows that the lumber was furnished for the buildings under two separate and distinct "arrangements" or contracts.

The contract for the house was let on August 10, 1907. It is admitted that the Phœnix Wood Working Company, the general contractor, submitted to the plaintiff a list of the lumber which would be required or desired for the house. The plaintiff bid on this list and on August 19, 1907, addressed a letter to the Phœnix Company in which he said: "I will deliver the lumber to Glenside as per your list for $1,462." This offer was accepted and the lumber for the house was delivered in pursuance of it. Plaintiff's bookkeeper and manager testified that he made a specific contract with the Phœnix company for the lumber which he was to ship to the house for $1,462. The plaintiff admits in his testimony that the written offer to furnish the lumber for the house was accepted, and that in delivering the lumber the list furnished by the Phœnix company was adhered to as nearly as could be. It is, therefore, manifest from the plaintiff's own testimony, apart from the corroborative testimony of the defendant, that there was a contract between the plaintiff and the contractor by which, for the consideration of a lump sum, the former agreed to furnish lumber for the house according to the list submitted to the plaintiff by the contractor.

We think it equally clear that there was another and separate "arrangement" or contract between the plaintiff and the contractor by which the former was to furnish to the latter the lumber for the garage. The contract for erecting the garage, it will be observed, was not made until October 10, 1907, two months after the contract for the erection of the dwelling house. During the progress of the work on the house and prior to the contract for the construction of the garage, the contractor wrote the plaintiff a letter relative to the material used in the house which contained, inter alia, the following: "We are figuring on a garage for Mr. Radell which will require about 8,000 more of them (shingles) besides other lumber.

Will send you list if we secure the contract." At that time it is apparent that the Phœnix company had not given the plaintiff an order for the lumber or entered into any contract with him to furnish the lumber for the garage. In fact, the Phœnix company could not have done so as it did not have a contract, at the time, with the owner for the erection of the garage. The letter, however, advised the plaintiff that in the event of the Phœnix company securing the contract for the construction of the garage, it would submit another proposition to him for furnishing lumber for that building. This was done, and on October 10, 1907, the date of the contract between the Phœnix company and the owner for the construction of the garage, the company submitted a list of lumber to the plaintiff who agreed to furnish it on the same basis as that upon which the estimate for the house had been made. The plaintiff's bookkeeper and manager testified that he copied in his books the list of lumber submitted by the Phœnix company and marked the prices that were to be paid the plaintiff by the company which were the same as those charged in the contract for the house. He says that when the list was submitted he informed the parties submitting it that the prices would be the same as those charged for the lumber furnished for the house. There is no dispute as to these facts. They appear from the plaintiff's own testimony and hence he is not in a position to controvert them. Conceding them to be true, an offer was made to furnish certain lumber at a certain price which was accepted. This constituted a contract between the Phœnix company and the plaintiff, and was entirely separate and distinct from the contract under which the plaintiff furnished lumber for the erection of the dwelling house. There may have been some deviation from the list that was submitted by the contractor but, as the plaintiff himself testified, it was adhered to as nearly as it could be. The change in the character and prices of lumber contained in the list submitted by the Phœnix company to the plaintiff from those actually furnished by the plaintiff for the garage does not destroy the separate nature of the contract for the material which went into the building. By the plaintiff's own testimony, there-

fore, there was a contract between him and the Phœnix company by which he was to furnish the lumber for the garage, and it was separate and distinct from the contract by which he was to furnish material for the dwelling house.

It is contended by the plaintiff that the dwelling house and garage were erected upon the same lot of ground, but this is denied by the owner. It will be observed that in the conveyance of the premises to the present owner, the property is "known and designated as lots Nos. eight and thirty-nine on a certain plan of lots of Glenside Highlands." It is true as claimed by the plaintiff, that there are certain building restrictions and conditions in the owner's deed, one of which prevents the erection of more than one dwelling house on the two lots. It is also true as suggested by the plaintiff, that, as provided in the contract, each structure was to be erected "on a certain lot or piece of ground situated at the corner of Roberts and Lynwood Avenues in Glenside." If the plaintiff had liened the premises as thus described, it might have raised the question whether the premises consisted of one or two lots. He did not do this, but in his lien describes the premises as "two certain lots or pieces of land, situate in said village at Glenside, in the township of Abington, said county, being lots Nos. eight and thirty-nine on a plan of lots known as the 'Glenside Highlands.'" From the lien itself, therefore, it appears that the plaintiff treated the premises on which the two structures were erected as two separate lots and not as a single lot or piece of ground. From the size of the lots and the distance the buildings were apart, it appears that they could not have been erected on the same lot but necessarily on different lots.

The question of law involved in the case arises, therefore, as stated by the learned trial judge, upon the following facts: When the owner of two adjoining lots, both fronting on a public road, erects under a contract dated August 10, 1907, a house on one lot, and under another contract dated October 10, 1907, a garage on the other lot, said contracts being separate contracts, and treated separately for all purposes, and where the general contractor before the contract for the garage is

contemplated, submits to a plaintiff, a subcontractor, a list of materials to be used in the house, on which the subcontractor gives a lump bid which is accepted, and subsequently the general contractor obtains the contract for the garage and submits another list of materials to the subcontractor for use in the garage at the former prices which is accepted, can the plaintiff, a subcontractor, file one lien against both structures erected on the two lots?

The plaintiff relies on secs. 2, 3, and 12 of the Mechanic's Lien Act of June 4, 1901, P. L. 431, to support his lien. We, however, are unable to see that these sections of the act permit him to file a claim against two separate structures under the facts of this case. Section 2 defines what shall be subject to a lien and provides that "every structure or other improvement, and the curtilage appurtenant thereto, shall be subject to a lien for the payment of all debts due to the contractor or subcontractor in the erection and construction or removal thereof, . . . . and of the outhouses, sidewalks, yards, fences, walls, or other enclosure belonging to said structure or other improvement, etc." There is no difficulty in the construction of this section of the act. It permits a claim to be filed against a single structure for the payment of any debts due to the contractor or subcontractor for the erection of the structure or for the erection of any outhouses, etc. It seems, however, to be claimed by the plaintiff that sec. 2 taken in connection with sec. 3 authorizes a single claim against two structures when one of the two structures is an outhouse or other building on the curtilage appurtenant to the structure, but this contention is not supported by either section or both sections construed together. Section 2, as observed, provides what shall be subject to a lien and for what debts due the contractor or subcontractor. Section 3 simply defines what the curtilage shall be and declares that it shall include "other structures whether newly erected or altered, or changed for such purposes, and forming part of a single business or residential plant," etc. It does not define what shall be the subject of a lien or make subject to a lien what is not determined to be subject to a lien by sec. 2. Its purpose is to define specifically the curtilage

which shall be considered appurtenant to the structure which sec. 2 makes subject to the lien.

Section 12 provides, inter alia, that "a single claim may be filed against more than one structure or other improvement if they are all intended to form part of one plant." That provision of the section, however, does not, in terms nor inferentially, authorize the filing of a single claim against two or more structures erected under two separate contracts. The provision contemplates that the two or more structures against which a single claim may be filed shall have been erected in pursuance of a single contract and as part of one plant. It does not expressly provide that a single claim arising under more than one contract may be filed against two structures, and there is nothing in the act to warrant the implication that such was the legislative intent. Had the general contractor for the house been a different person from the general contractor for the garage, the plaintiff certainly could not have filed one claim against the two buildings. Here, we have two separate and distinct contracts, of different dates, between the general contractor and the owner, and also two separate contracts of different dates, under which the plaintiff furnished the material to the general contractor for which he claims the right to a lien. In addition to these facts, the claim is filed against two buildings not averred to form a part of one plant, and erected on two different lots of ground. Again, a dwelling house and a garage cannot be considered as parts of one plant in contemplation of this provision of the section. It does not, like sec. 3, recognize a "residential" plant, but permits only a single claim to be filed against two or more structures when part of a business plant. The word "plant" is used in this section in its commercial sense, as we have held, and is to be given its ordinary sense of property owned or used in carrying on some trade or business: Todd v. Gernert, 223 Pa. 103.

The plaintiff contends, however, that another provision of sec. 12 permits a single claim to be filed against two structures when the materials are furnished under more than one contract. We do not, however, agree with that construction of the provision in question. It provides: "If the labor or materials

be furnished continuously in the erection and construction . . . . of a structure or other improvement, the claimant may file a single claim, though furnished under more than one contract, with the same effect as if furnished continuously under a single contract." It will be observed that the provision deals with "a structure or other improvement," which may be the subject of a lien for labor or materials furnished continuously under more than one contract. It does not provide in terms or by implication that a single claim may be filed against two structures for labor or materials furnished under more than one contract, or when, as in this case, they are furnished to the two structures under separate and distinct contracts. Had the legislature intended to give the right to file a single claim against two or more structures erected under more than one contract for labor or materials furnished continuously in their erection, it would have said so, and not conferred the right to file the claim against "a structure or other improvement."

The common law gave no lien for labor or materials in the erection of a building. The right to file a claim is entirely statutory, and in order to avail himself of it a party must comply strictly with the terms of the statute conferring the right. Nothing is to be presumed in favor of the lien. Here, the owner had provided for the erection of the two structures by separate and distinct contracts; and it was the duty of the subcontractor to know, and he did know, the relation existing between the owner and the contractor and under what contracts the buildings were being erected, and he should have dealt with the contractor in the light of this information. Had he done so, he would have enforced his claims arising under different contracts by filing a claim against each building for the materials which went into it.

The judgment is affirmed.