## Bossen v. Nocella (No. 2)

*Wisler, Pearlstine & Talone,* for plaintiff.

*Wolf, Block, Schorr & Solis-Cohen* and *Maxwell Strawbridge,* for defendant.

FORREST, J., July 7, 1958.—The owners or reputed owners of certain lots have alleged that a mechanic's lien claim is defective on its face and, accordingly, they have filed a petition to strike off the lien. An answer having been filed on January 17, 1958, the court ordered the matter on the argument list. On February 27, 1958, claimants filed a petition to amend their claim. However, by opinion and order dated May 13,

1958, this court refused to allow the amendment for reasons stated therein. See 16 D. & C. 2d 155.

The owners contend that the claim is incurably defective for 11 reasons. The first reason is that they were never served with notice of intention to file the lien. If claimants were subcontractors, there might be merit in the contention of the owners. See Mechanic's Lien Act of June 4, 1901, P. L. 431, sec. 8, as amended, 49 PS §101. However, it appears that claimants were contractors, not subcontractors; therefore if the averments of the claim are accepted as verity this section of the act is inapplicable.

The second reason which the owners assign for striking off the lien claim is that it is a lumped claim against several structures on different lots. The claim refers to 20 lots by number, but contains only seven descriptions by metes and bounds, some of them embracing two or more lots.

Section 11 of the act as amended, 49 PS §53, provides that the claim shall set forth, inter alia: "3. . . . a description of the real estate upon which (the structure or other improvement) is situate."

Section 12 of the act as amended, 49 PS §54, provides, inter alia: "A single claim may be filed against more than one structure or other improvement, if they are all intended to form part of one plant."

Section 12 of the act as amended, 49 PS §55, further states: "No apportioned claim shall hereafter be allowed, but separate claims, with the amount due determined by apportionment, may be filed as herein set forth."

Now we shall consider whether the lien claim as filed complies with sections 11 and 12 of the act as construed by the Supreme Court of the Commonwealth.

"By the eleventh (section of the Act) a claim may be filed for labor or materials furnished to a 'structure' but no permission is given to file a single one against

several structures": Todd v. Gernert, 223 Pa. 103, 105 (1909). Thus, in Black v. Hartrick, 247 Pa. 504, 506 (1915), the court stated: "A single claim was filed for materials furnished in the construction of two separate buildings and this cannot be done . . . To all intents and purposes they were separate independent structures, each of which including its curtilage could be sold and conveyed and thus separated from the other without depreciating the value of either property. The mere statement of these facts is sufficient to demonstrate that the authority of the case above cited is conclusive against the contention of (claimants)."

The inflexibility of the rule was illustrated in Michael Roofing Co. v. Macrides, 54 Lanc. 79 (1954). In that case two residences adjoined each other and were attached with a common roof. However, claimant was denied recovery because he had filed a single lien against both residences.

By the twelfth section of the act, a claim may be filed against more than one structure, but only when they are all intended to form a part of one plant. In the Todd case claimant contended that three separate and distinct dwelling houses were intended to form one plant. The court there stated, page 105: "In the claim filed they are not described as forming part of one plant, and if these words had been inserted in it, their use, in the face of the description of the properties as three separate brick dwelling houses, would have to be regarded as surplusage and as evidence of an utter misconception of the meaning of a 'plant'. That word is to be given its ordinary sense of property owned or used in carrying on some trade or business. Men speak daily of the plant as a foundry, factory, mill or railroad, but the term has not yet been applied to a row of dwellings where the only business carried on is housekeeping."

So also, in Schively v. Radell, 227 Pa. 434, 442 (1910), the court reiterated that section 12 of the act "does not . . . recognize a 'residential' plant, but permits only a single claim to be filed against two or more structures when part of a business plant. The word 'plant' is used in this section in its commercial sense, as we have held, and is to be given its ordinary sense of property owned or used in carrying on some trade or business." See also Cushman on Mechanics' Liens, Vol. 1, p. 675.

Claimants' claim in this case is based upon materials delivered to the "job site" where petitioners allegedly were constructing 20 houses. Manifestly, the materials were not designated for a particular house or houses, but were to be used in the whole operation. Therefore, claimants might have invoked the sentence of section 12 of the act, as amended, which allows the filing of separate claims, with the amount due determined by apportionment, although it expressly prohibits the filing of apportioned claims: Cushman, op. cit., Vol. 1, p. 673. Claimants failed to avail themselves of such right, but they contend that the sentence of section 12 of the act which is under consideration violates the Constitution of Pennsylvania and, therefore, is not binding against them. Our research discloses no decision wherein this section has been adjudged unconstitutional and we regard this as highly significant, particularly since the act has been in the statute books for more than 50 years. See Cushman, op. cit., Vol. 1, index p. CXVIII.

The eighth reason assigned by the owners in support of their petition is that the claim sets forth that the materials were furnished under two separate contracts, the first of which was entered into about May 18, 1953, for millwork for ranch type houses, and the other entered into about October 1954 for split-level houses. Section 12 of the act "does not, in terms nor inferen-

tially, authorize the filing of a single claim against two or more structures erected under two separate contracts. The provision contemplates that the two or more structures against which a single claim may be filed shall have been erected in pursuance of a single contract and as part of one plant. *It does not expressly provide that a single claim arising under more than one contract may be filed against two structures, and there is nothing in the act to warrant the implication that such was the legislative intent*": Schively v. Radell, 227 Pa. 434, 442 (1910). (Italics supplied.)

The claim must be stricken off because of the fatal defects which have been pointed out hereinabove. It is unnecessary to consider the other alleged defects of the claim as filed.

And now, July 7, 1958, the prothonotary is directed to strike off the claim filed in the above case from the Mechanics' Lien Docket and from the Judgment Index.