# Willson, Appellant, v. Canevin.

*Mechanic's lien—Notice to owner by subcontractor—Contract—Acts of June 4, 1901, P. L. 431 and April 17, 1905, P. L. 172.*

1. When a subcontractor notifies the owner of his intention to file a mechanic's lien, he must do so in substantial compliance with the Act of June 4, 1901, P. L. 431, as amended by the act of April 17, 1905.

2. Where a contract between a contractor and subcontractor is a written bid for a lump sum for an itemized list of articles without prices given for each item, a notice by the subcontractor to the owner is sufficient if the sworn statement accompanying it sets forth the written bid for the lump sum, and that such bid was accepted, and there is attached to the statement as a part thereof the itemized list of materials, but without any prices fixed for the various items.

3. In such a case if the claim for a mechanic's lien filed after such notice contains exactly the same matters set out in the sworn statement accompanying the notice, it will not be held defective because it does not set out the price of the particular materials furnished. The Act of April 17, 1905, P. L. 172, changed the provisions of the Act of June 4, 1901, P. L. 431, requiring a detailed statement of the prices to be attached to the claim.

Argued Oct. 21, 1909. Appeal, No. 129, Oct. T., 1909, by plaintiffs, from order of C. P. No. 2, Allegheny Co., July T., 1908, No. 37, making absolute rule to strike off mechanic's lien in case of F. E. Willson and Alex. Willson, Copartners, trading as the Standard Lumber Company, v. Rt. Rev. Regis

Canevin, Bishop of the Diocese of Pittsburg, Trustee et al. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Reversed.

Rule to strike off mechanic's lien.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was order making absolute rule to strike off mechanic's lien.

*A. S. Mabon,* for appellants.—The notice of intention contains a sufficient statement of the contract or bid without attaching thereto a copy of the bid: Este v. R. R. Co., 27 Pa. Superior Ct. 521; Day v. R. R. Co., 35 Pa. Superior Ct. 586; American Car & Foundry Co. v. Water Co., 215 Pa. 520; Beam v. Geiselman, 22 Montg. 106.

Where the contract is for a lump sum, it is not necessary that the sworn statement of the materials furnished give the price of each item of material: Day v. R. R. Co., 35 Pa. Superior Ct. 586; Louis Werner Sawmill Co. v. Chemical Co., 50 Pitts. L. J. 193; Maddocks v. McGann, 12 Pa. Dist. Rep. 701; American Car & Foundry Co. v. Alexandria Water Co., 215 Pa. 520.

Since the amending Act of April 17, 1905, P. L. 172, it is not necessary to set forth in the lien the price of each item of material furnished, where contract is for lump sum, or to attach a copy of the written contract bid to the lien.

*Chas. D. Gillespie,* with him *A. V. D. Watterson* and *A. B. Reid,* for appellees.—The notice and claim were defective: Noll v. Swineford, 6 Pa. 187; Russell v. Bell, 44 Pa. 47; Lee v. Burke, 66 Pa. 336; Brown v. Myers, 145 Pa. 17; Wharton v. Investment Co., 180 Pa. 168; Lee v. Exeter Club, 9 Pa. Superior Ct. 581; Wolf Co. v. R. R. Co., 29 Pa. Superior Ct. 439.

The cases decided on the question of the sufficiency of notice will be found as follows: American Car, etc., Co. v. Water Co., 215 Pa. 520; Este v. R. R. Co., 27 Pa. Superior Ct. 521; Wolf Co. v. R. R. Co., 29 Pa. Superior Ct. 439; Collins v. R. R.

Co., 29 Pa. Superior Ct. 547; Keeley v. Jones, 35 Pa. Superior Ct. 642; Day v. R. R. Co., 35 Pa. Superior Ct. 586; Howard v. Allison, 12 Pa. Dist. Rep. 117; Sawmill Co. v. Chemical Co., 11 Pa. Dist. Rep. 772; King v. Church, 14 Pa. Dist. Rep. 265; James v. Homoyer, 15 Pa. Dist. Rep. 957; Mock v. Roscoe, 14 Pa. Dist. Rep. 774.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

This was a petition of the owners to strike off a mechanic's lien filed by the plaintiffs, subcontractors, against the owners and contractors to enforce payment of a balance due for certain materials furnished for the erection of a parochial school building. The petition alleges that the lien is defective for the following reasons: (1) The notice of intention to file a lien does not have a copy of the contract attached thereto, and does not give the prices of the various items of materials, but fixes a lump sum for the materials alleged to have been furnished; (2) the claim avers that the contract of plaintiffs with the contractors consisted of written bids, alleged to be attached to the claim, but no copies are attached thereto and neither the claim nor bill of particulars attached thereto sets forth the prices of the several items of materials furnished, but fixes a lump charge therefor. It will be observed the owners allege that both the notice of intention to file the lien and the claim are defective in the particulars stated, and for these reasons they ask that the lien be struck from the record. The learned trial judge granted the prayer of the petition and struck the lien off. The plaintiffs have appealed.

1. Section 8 of the Act of June 4, 1901, P. L. 431, 3 Purd. (13th ed.) 2474, provides, inter alia, as follows: "Any subcontractor, intending to file a claim, must give to the owner written notice to that effect, together with a sworn statement setting forth the contract under which he claims, the amount alleged to be still due and how made up, the kind of labor or materials furnished, and the date when the last work was done or material furnished." As we have uniformly held, a mechanic's lien is the creature of statutory law, and he who would avail himself of the provisions of the statute must

show a substantial compliance therewith. It is only upon this condition that he has the right to enforce payment of his claim against the land for the labor or materials which are used in the improvement. This is especially true when a sub-contractor attempts to enforce his claim against the property of the owner. There is no privity between him and the owner. The latter has made no contract with him to supply labor or material and has no knowledge of the contract or the terms between him and the contractor for supplying labor or materials. When, therefore, a subcontractor notifies the owner of his claim he must do so in substantial compliance with the statute.

The sworn statement accompanying the notice in the present case says: "Written bid accepted for $3,400, and extras ordered amounting to $145.50 by Snee Bros., contractors; that the amount still due and owing to him under said contract is the sum of $2,333.90, with interest from November 21, 1907, which is made up as follows, to wit:

| | |
|---|---:|
| Contract price, | $3,400.00 |
| Extras ordered and furnished, | 145.50 |
| Total, | $3,545.50 |
| Credit by cash, | 1,211.60 |
| Balance due, | $2,333.90 |

As shown by exhibit 'A,' contract material, and exhibit 'B' extras, hereto attached and made a part hereof; that the kind of materials furnished was finished mill work, and the date when the last labor (or materials) was furnished was on the 21st day of November, 1907." Exhibit "A" is an itemized statement giving the items of materials furnished with the year, month and day of the several items, and also giving the total sum due for all the items of the materials furnished but not the price of each item. Exhibit "B" is an itemized statement of the extras which gives the year, month and day, the price for the first three items furnished on separate days, the lump sum for the items furnished on another day and the price for another item.

As we have frequently said, the purpose of giving this notice is to furnish information to the owner so that he may protect himself and not be required to pay an exorbitant price for the same labor or material. Section 9 of the act directs how the owner shall proceed when he has been served with a notice, accompanied by a sworn statement, of an intention to file a claim by a subcontractor. He may give a copy of the notice to the party personally liable for the debt and notify him that unless the claim is settled within fifteen days or he is furnished with a sworn statement setting forth wherein it is intended to be disputed, he may pay the same and deduct the amount from the contract price or hold the contractor personally liable for any loss. If the contractor approve the claim or fail to file a sworn statement of defense thereto the owner may pay the claim and deduct the amount from the contract price or hold the contractor liable for any loss. The notice and the sworn statement accompanying it should therefore be sufficiently clear and explicit to give the owner such information as will enable him to examine and investigate the claim and determine whether it is correct or not. For this reason, the legislature in sec. 8 has specifically enumerated what the sworn statement shall contain.

It is conceded that the notice and sworn statement were properly served on the owners in the present case. The statement avers that the contract under which the materials were furnished were a "written bid accepted for $3,400 and extras ordered amounting to $145.50." This, it will be observed, shows clearly the contract between the subcontractors and the contractor under which the materials were furnished. The bid was in writing, for a lump sum, and was accepted by the contractors. It is not clear how the contract could have been more definitely stated or in what terms it could have been stated which would have furnished more information to the owners. It was not a contract in writing executed by both parties containing prices fixed for the various items of material to be furnished. It was simply an accepted offer to furnish the material named in exhibit "A" for a specific sum without stating the prices for the various items of the ma-

terials.  The notice does not allege that copies of the written
bids were attached thereto but that the exhibit containing the
several items of material furnished were attached to the no-
tice.  We think the contract is sufficiently set forth in the
statement.

The section also requires that the statement shall set forth
"the kind of labor or materials furnished."  Exhibit "A" con-
tains a detailed statement of the materials furnished, showing
the items and the dates when they were furnished.  The ex-
hibit is a part of the notice and statement and is clearly suffi-
cient when read in connection with the statement proper which
avers: "that the kind of materials furnished was finished mill
work."  The statement also avers that the date when the last
materials were furnished was November 21, 1907.

We think the notice and statement are sufficient.  The state-
ment gives the owners a detailed account of the various items
of materials furnished, the total of the price to be paid and the
kind of materials furnished.  This is all the information he
needs to enable him to deal intelligently with the contractor
and protect himself.  He can readily ascertain, if he desires to
know, whether or not the contract price was exorbitant and
beyond the fair value of the materials agreed to be furnished.
If he desires, he can have a price put upon each item of the
material furnished by a person competent to value it and in
that way determine whether the sum total is exorbitant.
While the price agreed to be paid was a lump sum, the various
items of the materials furnished are specifically set forth in the
statement.  This differentiates it from the case where the
items and character of the material are not given and the
price is a lump sum.  In such case the statement would not be
sufficient because it would not enable the owner to ascertain
the fair value of the materials furnished for which only is he
liable.

2. The exhibit attached to the claim is a copy of the exhibit
attached to the notice, and sets out in detail the items of ma-
terials furnished by the subcontractors for the owners' build-
ing.  It, like the statement, avers that the materials were
furnished on a written bid and also alleges that the bid was

accepted verbally by the contractors. The claim also avers that the bid for the materials furnished was made and accepted for the lump sum of $3,400. The exhibit gives in detail the items of materials furnished but not the prices of the several items. It is alleged that the claim is defective in not setting out the price of the items and in giving only a lump sum as the price of the materials furnished. We do not, however, regard this position as tenable. Section eleven of the Act of June 4, 1901, P. L. 431, was amended by the Act of April 17, 1905, P. L. 172. Paragraph two of the amended section provides that the claim shall set forth, inter alia, "The amount or sum claimed to be due, and the nature or the kind of the work done, or the kind and amount of materials furnished, or both; and the time when the materials were furnished, or the work done, or both, as the case may be." This statement avers the amount due, the kind and amount of materials, and the time when the materials were furnished. The several items of the materials furnished are given, as we have seen, but not the prices of each item. Such information enables the owners to determine whether the price agreed to be paid the subcontractors is exorbitant or not. Having the several items and the kind of materials furnished and the total price, there should be no difficulty in ascertaining whether the total sum claimed is above the fair value of the property. As in case of the notice, a failure to give the items of the property furnished and only the lump sum as the price to be paid, the owner could not determine whether the subcontractor's claim was a fair or exorbitant value of the property. Paragraph six of section eleven of the act of 1901 required a detailed statement of the prices charged, and paragraph four of the same section required a copy of the written contract to be attached to the lien, but the act of 1905 repealed those provisions of the former act and they were not re-enacted.

We think this claim sufficient, and to require more than it contains would be imposing upon the party furnishing the material more than is necessary to protect the owner or any other interested party. As said by BELL, J., in Calhoun v. Mahon, 14 Pa. 56, 58: "We must not be hypercritical, when

scanning this species of lien, and estimating its sufficiency. Such a practice must necessarily defeat a very large majority of them; a result not to be desired where they furnish sufficient data to enable the parties subject to them, to ascertain all that is essential for them to know."

The order of the court below is reversed and the lien is reinstated.