# Bennett Lumber & Manufacturing Co. v. Hartrick, Appellant, (No. 1).

*Mechanic's lien—Separate liens—Dwelling house—Curtilage—Reference to other buildings—Act of June 4, 1901, P. L. 431.*

Where a materialman has three separate contracts with a contractor to furnish certain material respectively for a dwelling house, tenant's house and a barn all to be constructed on a lot consisting of seven acres, the whole to constitute a "residential plant" for the owner, a mechanic's lien filed by him for material furnished to the dwelling house is not void because he also filed at the same time liens against the tenant's house and the barn, and refers to these structures in the lien filed against the dwelling house. If the curtilage described contained more land than "should be justly included therein," Section 23 of the Act of June 4, 1901, P. L. 431, furnishes an ample remedy to have the curtilage restricted to what may be reasonably necessary.

In such a case the lien against the dwelling house is not defeated

because the owner made a subdivision of the whole lot after the plaintiff's bill had been incurred, so as to leave each of the three structures on a separate lot.

*Mechanic's lien—Lumping charge—Price of items.*

Where a materialman contracts to furnish a specified number of frames for windows and frames for doors and a specified number of feet of cornice for a lump sum, he will not be required in filing a mechanic's lien for such material, to specify a price for each item of material furnished, if he sets forth the number of frames and the number of feet of cornice, furnished.

*Mechanics' liens—Times when materials were furnished.*

Where a subcontractor files a lien for material furnished under a contract and states the time when the last material was furnished and that it was all furnished within six months last past, objection cannot be taken to the lien because it fails to show what items were furnished within three months immediately preceding the giving of notice of the intention to file the lien.

Argued April 26, 1915.   Appeal, No. 140, April T., 1915, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1913, No. 1775, on verdict for plaintiff in case of Bennett Lumber & Manufacturing Company v. J. Albert Hartrick and Lillian Brant Hartrick, Owners or reputed owners and T. O. Reese & Brother, Contractors, Commonwealth Trust Co., Trustee in bankruptcy of Y. O. Reese & Brother.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Scire facias sur mechanic's lien.   Before DAVIS, J.

The lien filed was substantially in the form of that filed in Curti v. Hartrick, supra.

The exhibit attached to the lien was as follows:

The kind of work done and material furnished was lumber and mill work.

It was furnished under a contract made by claimant with T. O. Reese, a partner of T. O. Reese and Brother, contractors for said building and this contract consisted

458 BENNETT L. & M. CO. *v.* HARTRICK, Appellant, (No. 1).

Statement of Facts—Opinion of the Court. [61 Pa. Superior Ct.

of the oral acceptance on or about December 19, 1911, by said T. O. Reese of a written bid made by claimant to furnish certain lumber and mill work for said building for the sum of nine hundred ($900.00) dollars. Of said lumber and mill work so agreed to be furnished there was furnished between the dates of December 19, 1911, and April 23, 1912, the following:

| | |
|---|---|
| 1 Cellar Dr. frame | |
| 1 Mullion Cellar frame | |
| 3 Box Cellar frames | |
| 2 Rear Door frames | |
| 1 Side Door frame | |
| 2 Front Wd. frames | $247.00 |
| 17 Wd. frames | |
| 3 Cas. Wd. frames | |
| 1 Mullion Wd. frames | |
| 440 ft. Cornice | |

which said material constituted two hundred and forty-seven ($247.00) dollars of the total contract.

Owing to the bankruptcy of said contractor claimant suspended further work on said contract.

Verdict and judgment for plaintiff for $282.81. Defendant appealed.

*Errors assigned* were various rulings and instructions.

*Herman L. Grote,* with him *Frederick C. Grote,* for appellant.

*Robert B. Petty, Jr.,* with him *William F. Petty,* for appellee.

OPINION BY HENDERSON, J., November 29, 1915:

The plaintiff was a subcontractor for material used in the erection of a dwelling house. The owners purchased seven acres of land and proceeded to erect thereon the dwelling referred to, a laborer's cottage and a barn.

Separate contracts for the construction of these buildings were entered into on the same day with T. O. Reese & Brother, contractors. The material furnished for which this lien was filed consisted of door frames, window frames and cornice, the same having been furnished in performance of a contract between the claimant and the contractor. It is not disputed that the material was placed in the building. Objection is made that the lien is filed against the whole property which includes the laborer's dwelling and the barn, and that separate liens were filed in like manner against the laborer's house and the barn for materials furnished in the construction of them. The appellant's contention is that each lien is in reality filed against all three structures and that the decision in Schively v. Radell, 227 Pa. 434, prohibits such a charge. That case held that one lien could not be filed against two structures built on separate lots for material furnished for use in each of the buildings and is decisive of the question there involved, but the claimant here did not file his lien against the three buildings. It was filed against the principal building and the reference to the cottage and the barn was incidental to the description of the curtilage. The claim for material furnished to each of the buildings was embraced in the lien filed against the particular building. It is true each lien describes the curtilage as the seven acre lot, but it is not in an actual or legal sense the case of one lien against several structures. The third section of the Act of June 4, 1901, P. L. 431, provides that "The curtilage appurtenant to the structure or other improvement shall be such as is reasonably needed for the general purpose for which such structure or other improvement was made, and belonging to the same owner, including other structures, whether newly erected, or altered, or changed for such purpose, and forming part of a single business or residential plant." Assuming that the whole lot is the appropriate curtilage a claimant who furnished material for the large dwelling house could properly describe it as the curti-

lage with the other buildings thereon.    If different materialmen had furnished material for each of the buildings each of such contractors could have filed a lien against the building to which he was a contributor and include such appurtenant land as was reasonably needed for the general purpose for which such structure was made and we see no reason why a single contractor furnishing material to each of the buildings is in a different situation.    A separate lien was filed against the large dwelling as was also done in the case of the cottage and the barn.    The real complaint is, therefore, that more was included in the curtilage than properly belonged there.    The evidence shows that at the time the plaintiff commenced to furnish material to the owners the land and buildings were intended to constitute "a residential plant."    The residence was located at the corner of Perrysville and Schwitter avenues; the barn was near the center of the whole plot and the cottage on Schwitter avenue at a suitable distance from the dwelling.    It was the declared intention of the owners to use the property as a residence and truck and poultry farm and the buildings were adapted to such a use.    The subdivision of the whole property was made about the time the buildings were completed or later and after the plaintiff's bill for material had been incurred.    There was justification for the plaintiff's assumption, therefore, that the property should be considered as an entirety and subject to the lien, but if a greater curtilage is claimed in the lien than is supported by the facts under the authority of Black v. Hartrick, 247 Pa. 504, relief could be had by application to the court below to restrict the lien to proper limits. That case arose out of the same building construction and related to the same piece of land.    A single lien was filed for materials furnished in the construction of two of the buildings under separate contracts.    This it was held could not be done but an item for materials and labor furnished for extra work on the residence was sustained as a single claim against a separate structure.

One of the defenses there as here was that the description of the land on which the residence was erected contained more than was reasonably necessary as a curtilage and included the ground on which the other structures were located. Of this the court said "The answer to this position is that if the curtilage described contains more land than 'should be justly included therein,' section 23 of the Act of June 4, 1901, P. L. 431, furnishes an ample remedy to have the same restricted to what may be reasonably necessary.

"Notwithstanding the very able argument of counsel for appellee on this point our conclusion is that the item of claim for extra materials and labor furnished on the basement walls of the residence valid in every other respect should not be stricken down because more land was included in the description of the curtilage than was reasonably necessary for the general purposes of the residence. If this becomes a material question application may be made to the court below to have the curtilage defined and the lien limited to the boundaries thus ascertained." The method thus pointed out protects the owner from an unauthorized and unjust application of the lien to property not reasonably within the curtilage. Whether, therefore, we regard the claim as good against the whole plot or consider the description of the premises as in excess of the area properly constituting the curtilage we do not find any basis for sustaining the appellant's contention on this part of the case.

It is further objected that the lien is a lumping charge in that the price in each item of materials is not given. The 11th Section of the Act of June 4, 1901, as amended by the Act of April 17, 1905, P. L. 172, directs what shall be set forth in a claim of this character. The second paragraph of the section requires a statement of "the amount or sum claimed to be due and the nature or kind of the work done or the kind and amount of materials furnished or both." This provision calls for a statement of the amount claimed to be due and of the kind and

amount of materials furnished but there is no statutory requirement calling for a statement of the price of each article. The object of such information is to give the owner the necessary knowledge to enable him to determine the correctness of the claim and where the information contained in the lien is sufficient on inquiry to give him such knowledge it is all that the law requires. "All the cases agree that a substantial compliance is sufficient and this is shown to exist wherever enough appears on the face of the statement to point the way to successful inquiry." American Car and Foundry Co. v. Alexandria Water Co., 215 Pa. 520. The plaintiff's claim was for ten items consisting of window and door frames and a specified quantity of cornice. They were placed in the building, they were open to the inspection of the owners and from such inspection or further inquiry the fairness of the price charged could easily be ascertained. We are unable to see that the appellants were in any way prejudiced by the failure of the claimant to set forth the price of each frame and as there was no statutory obligation resting on the plaintiff to specify the price of each article where the whole was furnished under a lump contract we think the claim is not objectionable on this ground. In Willson v. Canevin, 226 Pa. 362, a much larger claim of a similar character was the subject of controversy. In that case the court said "The statement gives the owners a detailed account of the various items of materials furnished, the total of the price to be paid and the kind of materials furnished. This is all the information he needs to enable him to deal intelligently with the contractor and protect himself......While the price agreed to be paid was a lump sum, the various items of the materials furnished are specifically set forth in the statement. This differentiates it from the case where the items and character of the material are not given and the price is a lump sum." Compliance with the terms of the statute is necessary but the remedy is not to be nullified by the imposition of conditions not demanded by the

legislation and which make the benefits intended to be secured difficult of attainment.

The objection that there were no proper items charged within the three months immediately preceding the giving of notice of the intention to file a lien is evidently an afterthought. No reference was made thereto in the very elaborate and specific affidavit of defense filed nor does the point appear to have been raised during the progress of the trial. It is true that the first item in the bill was furnished more than three months before the giving of the notice of intention to file a lien, but all of the items were furnished under a contract. The necessary averment as to time appears in the lien, the date of the last item is given and all the material went into the building. There does not appear to be any merit in this objection.

That the material was furnished on the credit of the building is averred in the lien and appears affirmatively in the testimony. A prima facie case is certainly made out and as there is no evidence to the contrary there is no support for the appellant's contention on this point.

The judgment is affirmed.

DISSENTING OPINION BY KEPHART, J., November 29, 1915:

I have no difficulty with the conclusion of the majority of the court with respect to the objection that the lien was filed against the whole property, including a laborer's dwelling and barn, but must express dissent with the conclusions on the other questions submitted. The Act of April 17, 1905, P. L. 172, amending Section 11 of the Act of June 4, 1901, P. L. 431, and as applicable to the question now considered reenacts Section 12 of the Act of June 16, 1836, P. L. 695. It is stated that the lien shall set forth "the time when the materials were furnished." The items in this lien were furnished between the dates of December 19, 1911, and April 23, 1912, the lien having been filed some months later. It is not necessary to state again the reasons why claims consisting

of a number of items filed by a subcontractor have been held defective where the time of furnishing is as here stated. In Burrows v. Carson, 244 Pa. 6; Crane v. Rogers (Nos. 1 and 2), in opinions recently handed down by this court those reasons are fully set forth. It is only necessary to cite the cases which we believe to be controlling. In McFarland v. Schultz, 168 Pa. 634, the claim was for grading and digging lots between August 28, 1892, and October 22, 1892. The claim was held defective for the reason that it did not sufficiently set forth the nature and kind of work done or when it was done. In Burrows v. Carson, the claim was "1911, April 4, to November 20, 137 hours' labor at 60 cents per hour, $82.20." Justice MESTREZAT says: "The only information as to the time when the labor was furnished is the statement that it was performed between the dates of April 4 and November 20, 1911, that is, some time during a period of over seven months. Such claims have never been held to be sufficient as to the kind of work or the time when it was done, either under the present or prior legislation on the subject." In Brant v. Hartrick, a case recently decided by this court, the claim was "1911, December 8, excavations from November 16 to December 8, 17 days, at $5.50 per day, $93.50." Judge HENDERSON quoted with approval both of these cases and held the lien to be defective. In Crane v. Rogers, No. 1, the claim was for plumbing supplies first furnished on December 13, 1910, and last furnished on October 28, 1911, and continuously from time to time between those dates. A large number of items was included in the claim. Following the decision of Burrows v. Carson the lien was held defective. A similar ruling was made in Crane v. Rogers (No. 2). In that case there was a written contract for material. The time was set forth in the same language as in the preceding case. This court held that Burrows v. Carson applied to oral and written contracts alike and that items for material were included within the rule. The court below, in considering the motion,

states as one of the questions the time or dates the materials were furnished, and in commenting on the question says: "Was the time when they were furnished sufficiently specific, it having been averred that they were furnished within six months last past and between December 19, 1911, and April 23, 1912," and Judge HAYMAKER held Burrows v. Carson not applicable, his thought being, as I understand, that it applied to labor only. It will thus be seen that the question was not only presented in the court below but considered thoroughly by the court in banc in dismissing the motion for judgment n. o. v.

The lien in this case provides as follows:

| | |
|---|---|
| "1   Cellar Dr. frame | |
| 1   Mullion Cellar frame | |
| 3   Box Cellar frames | |
| 2   Rear Door frames | |
| 1   Side Door frame | |
| 2   Front Wd. frames | $247.00" |
| 17   Wd. frames | |
| 3   Cas. Wd. frames | |
| 1   Mullion Wd. frame | |
| 440   ft. Cornice | |

Discussing the lien from the standpoint of a lumping charge, I believe, it cannot be sustained under the opinions of this court and the Supreme Court. A lumping charge has been defined by Mr. Justice MITCHELL to be articles of a different nature, kind or class embraced or embodied in one charge. This has been modified to a certain extent by Mr. Justice MESTREZAT, in Willson v. Canevin, 226 Pa. 362, where it was held that if there is a specific and accurate description of the articles charged, giving details of kind and character of materials, and if the price for the individual item could, by mathematical calculation, be ascertained, a flat charge for the whole would not be a lumping charge. Here we

have ten separate and distinct items lumped into one charge. There is positively nothing which identifies any one of the items in such manner that the owner of the property could intelligently arrive at their value. We think the case is controlled by the opinion of Mr. Justice MITCHELL, in Wharton, et al., v. Real Est. Investment Co., 180 Pa. 168. A lien was there filed for a boiler, a feed water heater, blow-off tank, and Worthington-Duplex pumps, in one charge for the whole. All these items were essentially connected, being necessary to a complete steam power outfit. Mr. Justice MITCHELL says, "there was no specification of prices, the whole being included in one sum. It was said in the argument without contradiction, that the boiler was the only part of the whole that was made as well as furnished by the plaintiffs, and that the other parts were bought by them from third parties to complete the outfit. Whether this be so or not it is clear from plaintiffs' own bill of particulars that the prices could have been itemized at least as to these four parts, and where that is the case it must be done." The bill of particulars itemized the four parts, but one part was exclusively of claimants' own manufacture.

What could have prevented this appellee from setting forth the prices, sizes, and character of materials of the different articles mentioned in this lien? Willson v. Canevin, supra, relied upon in this case, is vastly different from the case now under consideration. The items there mentioned were described minutely. The number, the size, the lights, and sash size were all specified in detail. One price was given for the whole. Mr. Justice MESTREZAT says, in effect, that it was merely a matter of mathematical calculation, anyone experienced in the business could have told the price of the individual item or whether the total sum charged was exorbitant. He says: "While the price agreed to be paid was a lump sum, the various items of the materials furnished are specifically set forth in the statement. This differenti-

ates it from the case where the items and character of
the material are not given and the price is a lump sum.
In such case the statement would not be sufficient be-
cause it would not enable the owner to ascertain the fair
value of the materials furnished for which only is he
liable." In that lien there was sufficient information to
have enabled a contractor desiring to estimate on a simi-
lar amount of material to have furnished a complete bid
without additional information. In the lien here filed
the character of the materials is not given, nor the size,
grade or any sufficient information upon which to base
a price, and it would be a mere guess on the part of the
owner or anyone else in determining whether it was fair
or not. In Shields v. Garrett, 5 W. N. C. 120, the follow-
ing item was held to be a lumping charge: "May 19, to
job of flag pavement and granite curb, as per agree-
ment, $1,076.00." In Burrows v. Carson, 244 Pa. 6, the
claim was not itemized and a lump sum was given. In
that case, where the claim filed contained the item "137
hours' labor at 60 cents per hour, $82.20," the Supreme
Court sustained the case of McFarland v. Schultz, 168
Pa. 634, by saying that the item did not set forth "the
nature or kind of work or when it was done." All the
liens in the cases cited "pointed the way" for the owner
to ascertain the correctness of the charge, just as much
as the lien now under consideration. We agree with the
opinion of the court that the "remedy is not to be nulli-
fied by the imposition of conditions not demanded by the
legislation and which make the benefits to be secured
difficult of attainment," but our appellate courts have
seen fit by their judicial utterances to impose these con-
ditions as a fair interpretation of the legislative will and
as this is special legislation in favor of a special class
of creditors, who have no more moral right to file a lien
for their claims than the grocer or the doctor has to file
a lien for his claims, it has been the uniform practice of
this court and the Supreme Court to hold the lienors to
a strict compliance with the act. The section of the Act

of April 17, 1905, P. L. 172, dealing with this subject, amending Section 11 of the Act of June 4, 1901, P. L. 431, virtually re-enacts Section 12 of the Act of June 16, 1836, P. L. 695, as it relates to this question. Therefore the cases predicated on the Act of 1836 would control the determination of this question: Burrows v. Carson, supra. The very nature of the articles furnished makes them susceptible of many different prices. What difficulty was there in requiring this lien creditor to designate, as Mr. Justice MESTREZAT says, the character of the materials and to place opposite them the price? Surely the owner is entitled to this much information, but in the light of the majority decision in this case, we feel that almost any lien would be sustainable as not being in violation of the principle or "lumping charge." The owner could not have inspected the building and by inquiry ascertained the fairness of the price, because the lien does not give sufficient information for him to determine that fact. From the character of this building, no one, not even the lien creditor, could have ascertained the fairness of the price from the information here given. If these were the only items of their class in the entire building, this argument that an inspection would reveal the price would be formidable, but the lien is silent on this and the evidence indicates otherwise. In fact, it appears that through bankruptcy the creditor did not complete its contract and this lien represents less than one-third of the material to be furnished.

I would therefore reverse this judgment.