# Dyer, Appellant, *v.* Wallace.

*Mechanics' liens—Architect—Plans—Supervision of construction —Requisites of lien—Bill of particulars—Unliquidated damages— Breach of contract—Discharge of architect—Act of June 4, 1901, P. L. 431—Constitution, Article III, Section 7.*

1. A mechanic's lien is a pure creature of the statute, and compliance with statutory requirements is necessary to its validity. It must state facts, and not depend on inferences. A bill of particulars filed with the claim becomes a part of it.

2. A rule to strike off a mechanic's lien must be determined by the record.

3. A lien must set forth the amount or sum claimed to be due, and be so stated as to form a basis for a liquidation of judgment. It must contain at least one valid item.

4. The services of an architect in preparing plans cannot be made the subject of a mechanic's lien, except in connection with other services rendered in the construction of the building.

5. A construction of the Act of June 4, 1901, P. L. 431, that would extend its benefits to an architect merely for preparing plans, would render it invalid as a special law, or as changing the method for the collection of debts in contravention of Section 7 of Article III, of the Constitution of 1874.

6. A mechanic's lien can be sustained only for work done or materials furnished, and not for unliquidated damages for breach of contract. It cannot be made to embrace anything, whether labor or material, not actually furnished.

7. A mechanic's lien will be stricken off, where it shows on its face that it was filed by an architect for services in supervising the construction of a manufacturing plant for an amount equal to ten per cent of the total cost of the building, and that before the work was completed the owner refused to permit the claimant to continue the supervision of the unfinished portion of the work but fails to show the total cost of the work, or the cost of any part of it, or the cost of the work that was finished when the claimant was discharged.

8. In such a case, the claimant might have filed a lien against the plant for the value of the work actually done, coupled with an averment that full performance of the contract on his part had been prevented by the owner.

*Mechanic's lien—Amendment—Mistake—Averments in affidavit.*

9. A petition to amend a mechanic's lien will not be granted, where the affidavit to the petition fails to state that the averments in the petition are true in fact, or that there was any mistake in the original claim.

Mr. Justice SIMPSON filed a dissenting opinion.

Argued Jan. 23, 1919.  Appeal, No. 218, Jan. T., 1919, by plaintiff, from order of C. P. No. 1, Philadelphia Co., March T., 1918, No. 5366, M. L. D., striking off mechanic's lien in case of William E. S. Dyer v. Richard L. Wallace, owner, and Richard L. Wallace, trading as R. L. Wallace & Company, Contractor.  Before BROWN, C. J., STEWART, FRAZER, WALLING and SIMPSON, JJ.  Affirmed.

Rule to strike off mechanic's lien.  Before PATTERSON, J.

The court made absolute the rule to strike off the lien. Plaintiff appealed.

*Errors assigned* were in making absolute rule to strike off lien and in discharging rule for leave to amend the lien.

*J. S. Freeman,* for appellant.—A mechanic's lien claimant may amend his lien by changing the phraseol-

ogy so as to conform to the fact as existing at the time
the amendment is asked for: Thirsk v. Evans, 211 Pa.
239; Nagle v. Garrigues, 46 Pa. Superior Ct. 155; May
v. Mora, 50 Pa. Superior Ct. 359.

An architect has the right under the Act of June 4,
1901, to file a mechanic's lien for his skill and services in
the preparation of plans, drawings and specifications for
buildings and in supervising the construction thereof.

The claim as filed in the case now before the court com-
plies with the provision of the Act of June 4, 1901, P. L.
431, as amended by the Act of April 17, 1905, P. L. 174:
Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382;
Vulcanite Paving Co. v. Phila. Rapid Transit Co., 220
Pa. 603; Page v. Carr, 232 Pa. 371; Linden Steel Co. v.
Rough Run Mfg. Co., 158 Pa. 238; Wyss-Thalman v.
Beaver Val. Brewing Co., 216 Pa. 435; Burger v. S. R.
Moss Cigar Co., 225 Pa. 400; Deeds v. Imperial Brick
Co., 219 Pa. 579; Hiestand v. Keath, 42 Pa. Superior Ct.
403; Murphy v. Bear, 240 Pa. 448; Mesta Machine Co.
v. Dunbar Furnace Co., 250 Pa. 472; American Car, etc.,
Co. v. Alexandria Water Co., 215 Pa. 520.

*Wayne P. Rambo,* with him *Joseph W. Kenworthy* and
*Ormond Rambo,* for appellee.—The lien under consider-
ation is an architect's lien, and before proceeding to dis-
cuss the lien itself in detail, it is to be borne in mind that
an architect who only furnishes plans and drawings, and
performs no services in the erection of a building, is not
entitled to a lien: Bank of Penna. v. Gries, 35 Pa. 423;
Price v. Kirk, 90 Pa. 47.

That any advance upon the lien law beyond what that
law was in 1874, is unconstitutional legislation, is defi-
nitely settled by Page v. Carr, 232 Pa. 371, and by the
following cases: Vulcanite, etc., Co. v. Allison, 220 Pa.
382; Vulcanite Co. v. P. R. T. Co., 220 Pa. 603; Taylor
Lumber Co. v. Carnegie Institute, 225 Pa. 486; Sterling
Bronze Co. v. Syria Imp. Assn., 226 Pa. 475; Sax v.

School Dist., 237 Pa. 68; Malone v. Hosfield, 53 Pa. Superior Ct. 134, 141.

By no sort of construction can a mechanic's lien be made to embrace anything, whether labor or material, not actually furnished: Deeds v. Imperial Brick Co., 219 Pa. 579; Alguire v. Keller, 68 Pa. Superior Ct. 280; Page v. Carr, 232 Pa. 371; Laughlin v. Solomon, 180 Pa. 179; Fahnestock v. Speer, 92 Pa. 146.

OPINION BY MR. JUSTICE WALLING, March 17, 1919:

This is an appeal by the claimant from an order striking off a mechanic's lien. The owner, Richard L. Wallace, on June 21, 1917, entered into a written agreement with the claimant, William E. S. Dyer, a mill engineer and architect, by which the latter was to prepare plans and supervise the construction of a wool scouring plant on a tract of land at Eighty-first street and Bartram avenue, Philadelphia. The plant was to embrace two warehouses, a power house, a steam piping system and other structures and equipment. The contract states that, "As compensation in full for services to be rendered by him the said Dyer shall be paid a commission of ten per cent of the total cost of the building construction and equipment." On May 13, 1918, Mr. Dyer filed the lien here in question setting forth a copy of the contract and claiming $18,134.88, made up of items in the attached schedule. The lien sets forth, inter alia, "The said claimant......supervised the construction of the buildings erected and the installation of the machinery placed therein. The said claimant entered upon the performance of the said services on June 21, 1917, and was continuously engaged in the performance thereof from said date until the filing of this lien when the said Richard L. Wallace refused to permit the said claimant to continue the supervision of the unfinished portion of said work, in violation of the terms of the aforesaid contract. The lot of ground on which the several buildings hereinafter more particularly described are erected, in course of

erection, or at the time the services rendered were intended to be erected, to be used as hereinbefore stated together as one plant, is described as follows." This is followed by a description of the buildings erected thereon, which states, inter alia: "The steam piping system extends from the boiler house to the several buildings which said system is now being in process of construction," and, referring to warehouse No. 2, states: "The building to be erected in accordance with the plans and specifications prepared by the claimant.......was to be constructed of brick and timber similar to warehouse No. 1."

The schedule or bill of particulars is indefinite; while it purports to be, "In account with Richard L. Wallace & Company," the claimant's name does not appear therein. It mentions ten per cent commission and computes it on forty-four items, in two groups; above them appears the only date, "September 7, 1917." The four largest items are stated thus, "No. 1 Warehouse...... Henry E. Baton, $44,000; Power House, $15,363.87; No. 2 Warehouse Bid, $74,137; Piping System, $13,371." The other items are equally and in some instances more indefinite. The claim includes some small items, amounting to $58.76, for alleged services and expenses, aside from the contract, for which there seems to be no justification and which we will not discuss. The amount of the claim as above stated is the balance after deducting credits of $4,717.50.

The requisites of a claim under the Act of April 17, 1905, P. L. 172, are in the main similar to those under the Act of 1836; so decisions under the earlier statute are still applicable. We will state some principles and authorities which seem to bear upon the case.

A mechanic's lien is a pure creature of the statute, and compliance with statutory requirements is necessary to its validity: Tenth Nat. Bank v. Smith Const. Co. (No. 1), 218 Pa. 581. It must state facts and not depend on inferences: Wharton v. Real Est. Investment Co. of

Phila., 180 Pa. 168; Knelly v. Horwath, 208 Pa. 487; Rush v. Able, 90 Pa. 153, 160. A bill of particulars filed with the claim becomes a part of it: Am. Car, etc., Co. v. Alexandria Water Co., 215 Pa. 520; Schultz v. Sarver, 3 Penny. 411; and a rule to strike off a mechanic's lien must be determined by the record: Burger v. S. R. Moss Cigar Co., 225 Pa. 400; Mesta Machine Co. v. Dunbar Furnace Co., 250 Pa. 472; Hiestand v. Keath, 229 Pa. 149.

The lien must set forth the amount or sum claimed to be due: Act of April 17, 1905, P. L. 172; Burrows v. Carson, 244 Pa. 6, 12; and so stated as to form the basis for a liquidation of judgment. It must contain at least one valid item: McCristal v. Cochran, 147 Pa. 225; Mercer M. & L. Co. v. Kreaps, 18 Pa. Superior Ct. 1.

The services of an architect in preparing plans cannot be made the subject of a mechanic's lien (The Bank of Pennsylvania v. Gries, 35 Pa. 423; Price v. Kirk, 90 Pa. 47), except in connection with other services, rendered in the construction of the building: Trickett's Law of Liens in Penna., vol. 1, sec. 9; Johnson's Law of Mechanics' Liens in Penna., p. 173. A construction of the Act of June 4, 1901, P. L. 431, that would extend its benefits to an architect, merely for preparing plans, would render it invalid as a special law for the extension of liens, or as changing the method for the collection of debts, in contravention of Section 7 of Article III of the Constitution of 1874; see Sax v. School District, 237 Pa. 68; Page v. Carr, 232 Pa. 371; Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382.

A mechanic's lien can be sustained only for work done or materials furnished and not for unliquidated damages for breach of contract: Deeds v. Imperial Brick Co., 219 Pa. 579. There, Mr. Justice STEWART, in delivering the opinion of the court, says (p. 582), "By no sort of construction can a mechanic's lien be made to embrace anything, whether labor or material, not actually furnished. Plaintiffs had a right to subject the building to a lien

for the work they did upon and about its erection and construction; but a claim for anything beyond necessarily sounded in damages, and these can never be made the subject of a mechanic's lien"; and see Stephens & Co. v. Campbell et al., 13 Pa. Superior Ct. 7. In each of those cases as here the claimant sought to embrace in his lien a claim for damages for breach of contract. In the present case appellant was discharged during the building operation, when work on some of the structures had not begun, while others were in process of construction and some possibly finished. According to the contract his commission was to be on the total cost of the building construction and equipment; but he fails to aver the total cost or in fact the cost of any part of it. Certain items are stated, but no averment that they represent the total cost or the actual cost of the respective structures. As the lien was filed when the plant was but partially constructed, its total cost could not then be known. This clearly appears in the largest item, "No. 2 Warehouse Bid, $74,137." That does not show the cost of the building, and nothing had been done towards its construction, yet $7,413.70 of this claim is based upon it. This lien could be sustained only for work actually performed and the amount of that is not stated; admittedly but part of the entire work was done and we do not know what part as it blends the claim for work done with that for work not done, and, hence, cannot be sustained. Appellant might have filed a lien against the plant for the value of the work actually done (Linden Steel Co. v. Rough Run Mfg. Co., 158 Pa. 238; Safe Deposit Co. v. Columbia Iron & Steel Co., 176 Pa. 536; East Stroudsburg Lumber Co.'s App., 1 Pa. Superior Ct. 261), coupled with an averment that full performance of the contract on his part had been prevented by the owner; but what he seemingly attempted to do was to claim for a full performance while admitting that it had not been done. In assumpsit he might claim for work done and

damages for breach of contract, but a mechanic's lien cannot be sustained for the latter.

The most specific item is the one first above quoted, viz: "No. 1 Warehouse—Henry E. Baton, $44,000"; which, it is suggested, is sufficiently specific; but it is not averred that Henry E. Baton was the contractor for that building or that the sum stated was its cost. Such conclusion must be reached if at all by inference and not from averment. Neither do we agree with the suggestion that the averments as to the machinery placed in the power house are sufficient; for example, take the largest of those items, stated in the bill of particulars as, "Permutit Company......$6,570.00"; there is no averment that this sum was the cost of or connected with the Permutit Water Softener equipment mentioned in the body of the claim; and placing it in the bill of particulars in a separate group of items from the power house adds to the uncertainty. The lien cannot be sustained as a claim for work actually done, independent of the contract, as there is no averment of the value of such work.

While some averments standing alone might be sufficient yet we should consider the claim as a whole; for example, there is a general statement to the effect that claimant performed the contract on his part, but followed by a specific statement that he was discharged during the progress of the work and prevented from completing it, and we cannot ignore the latter averment. We are considering the lien as if filed by a contractor and not by a subcontractor.

Error is also assigned to the order of the court below refusing to allow an amendment of the mechanic's lien in question. Section 51 of the Act of June 4, 1901, P. L. 454, 3 Purdon's Digest (13th Ed.), p. 2504, provides that the claim, etc., "may be amended......upon petition for that purpose under oath or affirmation setting forth the amendment desired, that the averments therein contained are true in fact, and that by mistake they were omitted from or wrongfully stated in the particulars as to which

the amendment is desired." The appellant's only aver-
ment in his affidavit to the petition for leave to amend
is, "that the averments in the foregoing petition con-
tained are true as he verily believes," and the petition
makes no allegation of any mistake in the original claim.
As the affidavit fails to state that the averments in the
petition are true in fact, or that there was any mistake
in the original claim, the amendment was properly re-
fused.

The assignments of error are overruled and the orders
appealed from are affirmed.

DISSENTING OPINION BY MR. JUSTICE SIMPSON:

Plaintiff filed a mechanic's lien against defendant as
owner and contractor, defendant moved to strike it off,
plaintiff moved for leave to amend, the court dismissed
the latter motion and made absolute the former, and
plaintiff appeals.

Section 11 of the Act of June 4, 1901, P. L. 431, as
amended by Section 1 of the Act of April 17, 1905, P. L.
172, specifically sets forth what averments are necessary
in a mechanic's lien; with slight changes of verbiage, not
affecting the meaning, they are the same as in Section 12
of the Act of June 16, 1836, P. L. 695, and hence the de-
cisions under the latter act, so far as authorities are
needed, are pertinent in considering the questions at
issue in this case.

The requirements are threefold: First, that the claim
shall set forth "the names of the party claimant and of
the owner or reputed owner of the building, and also of
the contractor, architect or builder." The claim in this
case says that the name of the claimant is William E. S.
Dyer, the owner is Richard L. Wallace, and the con-
tractor is the said Richard L. Wallace, trading as R. L.
Wallace & Company. The second requirement is that
the claim shall specify "the amount or sum claimed to
be due and the nature or kind of the work done, or the kind
and amount of materials furnished, or both, and the time

when the materials were furnished or the work done or both, as the case may be." The claim says that the amount due is $18,134.88, for services rendered in the erection and construction of the buildings under a contract with the owner, a copy of which is attached to the lien, and proceeds: "the said services consisted of the preparation of general and preliminary plans,—the location of the several buildings and structures, so as to permit them to be operated as a single plant; the preparation of detailed plans, working drawings, and specifications for each separate building and structure; the designing, selecting and supervising the installation and erection of the heating, ventilating, mechanical, electrical and sanitary equipment, including fire protecting apparatus, and whatever else was necessary to a complete construction of said plant, including the selection and purchase of engines and machinery of all kinds required in the operation of said plant for carrying on the wool scouring and wool storage business by the said owner and contractor. All of the above-mentioned services were rendered and performed by the said claimant in full compliance with the terms of the aforesaid contract." It also says that claimant "entered upon the performance of said services on June 21, 1917, and was continuously engaged in the performance thereof until the date of the filing of this lien.".....The third and last requirement is that the claim shall specify "the locality of the structure or other improvement with such description thereof as may be necessary for the purpose of identification, and a description of the real estate upon which the same is situate." The claim in this case describes particularly the property and the several buildings upon which the work was done, giving their location and size, as well as the purposes for which they were to be used. It is clear, therefore, that every requirement of the Act of 1905, is fully met by this lien, and the court below erred in striking it off, unless some other reason be shown for its action.

The principal objection grows out of the averment that the claim is not sufficiently specific; but this can hardly be so where, as here, it avers everything required by the statute. Moreover, this contention wholly overlooks the fact that the claim is not filed by a subcontractor, but by one who contracts directly with the owner. Under the Act of 1836, it was held in a series of cases, of which Haley v. Prosser, 8 W. & S. 133, is probably the last, that a mechanic's lien would not be sustained "where there is a special contract with the owner," for in that event "the party who deals with him must provide for his own security; but where there is no agreement in which the terms of the bargain are particularly stated, he is supposed to contract on the basis of the law." Under that act, for the protection of the owner, a subcontractor was, and under the Act of 1901 still is, required to specify in detail the work which he did, the materials which he furnished, and the prices which he claims to be paid for them; but even in that class of cases (Willson v. Canevin, 226 Pa. 362) if a lien specifies the total contract price, and details the work and materials actually furnished, it is not necessary to state the prices charged for the various items.

Section 5 of the Act of April 16, 1845, P. L. 538, was passed to give to the principal contractor the right to file a lien, even though he had a special contract with the owner; and under it, beginning with Young v. Lyman, 9 Pa. 449, and running down to the present time (Brown v. Myers, 145 Pa. 17, 20; Murphy v. Bear, 240 Pa. 448, 451), it has been consistently held where the contract was made directly with the owner, it was not necessary to set forth the items for which the lien was filed, unless the contract itself provided for the work or materials to be furnished as specific items. The reason for the distinction between the two classes of liens is, in the latter class the owner already knows whether or not the lien is a proper one, and does not need to be advised in regard thereto; whereas in the former he does need the informa-

tion, because "the agreement between him [the subcontractor] and the contractor is not the measure of the owner's responsibility": Chapman v. Faith, 18 Pa. Superior Ct. 578, 587. It necessarily follows,—and perhaps it is nowhere better stated than in Judge RICE's opinion in the last-cited case,—if the claim gives the owner sufficient information to enable him to know whether or not it ought to be paid, and to defend against it if he thinks it should not, it answers every purpose required by law.

Always remembering that here the contract was with the owner, and that if any one item is sufficiently averred this rule to strike off the entire claim must fail (McCrystal v. Cochran, 147 Pa. 225), the proper conclusion ought not to be difficult. The contract provides "as compensation in full for services to be rendered by him, the said Dyer shall be paid a commission of ten per cent of the total cost of the building construction and equipment," and "all bids are to be submitted to Richard L. Wallace & Company; the several contracts are to be selected by Dyer, subject to the approval of Richard L. Wallace & Company, and placed by Richard L. Wallace & Company with the individual contractors." This the claim avers was done, and hence it is clear defendant knew exactly what the bids were, who were the successful bidders, and what was plaintiff's ten per cent thereof. The lien says that one of the buildings actually "constructed" is a "power house" in which has been placed as part of the equipment, "two Coatesville boilers, Skinner engine, Western Electric Generator, Permutit Water Softener equipment, Harrison Safety Boiler Works feed water heater, Griscom-Russell hot water heater, and Walker Electric switchboard," and "the particular items upon which said commission was based are particularly mentioned in the schedule hereto attached, marked 'Exhibit B'"; from which we find the cost of those specific items is detailed as $8,170, $3,202, $1,815, $6,570, $670, $691, and $673, respectively. Upon those items which were "located" in the "constructed" power

house, plaintiff is entitled to recover by this lien a ten per cent commission, but by striking it off he is deprived thereof.

Misled thereto by defendant's denial that "any services were performed by the claimant for which a mechanic's lien can be filed under the law," the court below held, while it is true Section 1 of the Act of June 4, 1901, P. L. 431, authorizes a lien in favor of an architect who draws plans and specifications for the work, and also superintends the erection of the structure or other improvement; yet this provision is unconstitutional because it is an extension of the right to file a lien beyond that existing at the time of the adoption of the Constitution of 1874, and under Page v. Carr, 232 Pa. 371, and kindred cases, such an extension is within the inhibition of Article III, Section 7 of the Constitution. The majority opinion does not make this error, which consists in the assumption that no such right existed when the Constitution of 1874 was adopted. In Bank of Penna. v. Gries, 35 Pa. 423, we held that an architect who draws plans and specifications of a building and also superintends its construction, is entitled to a lien. This case is followed in St. Clair Coal Company v. Martz, 75 Pa. 384, and Bernheisel v. Smothers, 5 Pa. Superior Ct. 113; and it is also recognized in Price v. Kirk, 90 Pa. 47, and Rush v. Able, 90 Pa. 153, which, however, limit its application to cases where an architect superintends the work as well as draws the plans and specifications. There is no authority to the contrary. In the present case, as quoted from the lien above, plaintiff did both, and therefore would have been entitled to a lien prior to 1874, and is now entitled to it under Section 1 of the Act of 1901.

It is next objected that the lien cannot be maintained because it shows plaintiff did not complete the work of supervision, the averment being "the said Richard L. Wallace [owner] refused to permit the said claimant to continue the supervision of the unfinished portion of said work in violation of the terms of the aforesaid contract."

In Bank v. Gries, supra, it was held an architect who is employed to draw plans for and supervise the construction of a building, is entitled to the full amount of his contract, although the work was stopped by the owner before it was completed.   It is not necessary at this time to consider how far, if at all, the matter is affected by Deeds v. Imperial Brick Company, 219 Pa. 579, and Murphy v. Bear, 240 Pa. 448, especially as in the former mechanic's lien case it was held to be erroneous to say that one employed to superintend the construction of a building may recover, after a wrongful discharge, the entire commissions he would have received had he continued so to do until completion, and equally erroneous to hold he would be entitled to be paid for his superintendence only up to the time of his discharge.   In the present case the plans were prepared, a portion of the services of superintendence was unquestionably rendered, plaintiff was entitled to a lien for at least as much as they were worth, and the motion to strike off the whole lien should fail.

The exact point of divergence between the majority of the court and myself is found in the inquiry: Can a contractor who has been wrongfully refused permission to finish his contract, recover for work actually done, without setting forth in his lien an apportionment as between the work done and that not done?  If an apportionment was requisite, still the judgment below should be reversed, for that question is not raised by the motion to strike off, defendant's contention, as above quoted, being that the character of services performed was not such as to entitle plaintiff to a lien.   That omission, if it be one, was amendable, and the lien doubtless would have been so amended had objection been made on that ground. But in this case it was not required.   If the contract had been for a gross sum, perhaps it would have been (though even there, in my judgment, it would have been a matter for the jury, in view of plaintiff's strict compliance with the act of assembly) ; but where, as here, the contract is

made directly with the owner, and the extent of the recovery is measured by a percentage of a number of items, and the cost of any one thereof is averred, a rule to strike off the whole lien should not prevail: McCristal v. Cochran, supra. Of course "the lien must be self-sustaining"; but that only means every requisite of the claim, as prescribed by law, must appear therein, or be fairly deducible therefrom: Willson v. Canevin, supra; Chapman v. Faith, supra. In the present case, as shown above, every requisite of the act of assembly has been complied with, and no principal applicable to mechanics' liens has been violated. In my opinion, therefore, the order striking off the lien should be reversed, the lien reinstated, and a procedendo awarded.