## Halowich v. Amminiti

Before Carr, P. J., Bane and Dumbauld JJ.

*Anthony Cavalcante*, for plaintiffs.

*Ray, Coldren & Buck*, for defendants.

DUMBAULD, J., December 22, 1958. — In this case plaintiffs filed a mechanic's lien to enforce collection of amounts allegedly due under a written agreement for the construction of a dwelling house built by plaintiffs for defendants. Thereafter scire facias was issued out, and at the trial a nonsuit was granted at the close of plaintiff's evidence.

This type of proceeding is purely the creature of legislation. A mechanic's lien is simply a statutory security for enforcing the payment of certain claims which have supposedly added to the value of the property made subject to the statutory collection procedure. It is an additional concurrent and cumulative remedy in rem, given by statute, and does not derogate from any other available remedies such as assumpsit: Mechanic's Lien Act of June 4, 1901, P. L. 431, 49 PS §§159, 265; 12 Standard Pa. Practice, §§256, 257, 300; Yanko v. Donaldson, 62 D. & C. 417, 419 (1947). On the other hand, the cause of action of a plaintiff seeking to enforce a mechanic's lien cannot rise higher than the original debt which it secures, just as a mortgage is not collectible unless there is a valid debt which it secures: 12 Standard Pa. Practice, §258.

The Mechanic's Lien Act of June 4, 1901, P. L. 431, 49 PS §21, provides that: "Every structure or other improvement . . . shall be subject to a lien for the payment of all debts due to the contractor or sub-contractor in the erection or construction . . . thereof."

This language makes plain that the property is merely being subjected to a particular type of lien, to secure the payment of a certain type of debts. If there is no valid debt of that sort created, the lien cannot be enforced; but failure to comply with the statutory requirements may defeat collection by means of the statutory procedure even though the debt itself may be a valid obligation, or damages may be recoverable for breach of contract.

The same conclusion results from another provision of the act, 49 PS §157, to the effect that:

"In addition to the defenses growing out of the insufficiency of the claim itself, or of the proof of the facts necessary to sustain it as a claim against the structure or other improvements, any defense which would defeat the action were it a personal one against the contractor to recover for the particular work or materials required to be done or furnished under the contract of the owner, or which shows that the claim was intentionally filed for a grossly excessive amount, shall wholly defeat the claim; and proof that the work in certain particulars was not in accordance with that contract shall defeat it pro tanto. Minor defects, or a failure to complete in minor particulars, shall operate as a defense only to the extent necessary to repair or complete the work."

In Horn & Brannen Manufacturing Company v. Steelman, 215 Pa. 187, 190-91 (1906), the court said:

"The right to file a mechanic's lien must have a contract as its basis or foundation . . .

"The right of lien does not arise or grow out of the furnishing or delivery of the materials, but out of the debt contracted for them."

The Supreme Court explained in another case that: "A mechanic's lien is a pure creature of the statute, and compliance with statutory requirements is necessary to its validity." It can be sustained "only for work done or materials furnished and not for unliqui-

dated damages for breach of contract": Dyer v. Wallace, 264 Pa. 169, 173-74 (1919). Proceedings under a mechanic's lien are in rem, not in personam: Vulcanite Portland Cement Company v. Allison, 220 Pa. 382, 386 (1908).

Applying the foregoing authorities to the case at bar, we note that it is abundantly clear that the mechanic's lien asserted by plaintiffs is based solely upon the written agreement between plaintiffs and defendants, executed on August 10, 1956. The "debt" necessary as the foundation for a valid mechanic's lien must arise by virtue of the terms of the written agreement. Plaintiff's counsel explicitly disclaimed any reliance upon quantum meruit as a basis of recovery, and also explicitly disclaimed any incorporation by reference of the plan or "picture" as a part of the agreement relied upon.

Consequently, unless within the four corners of the document there is a sufficient basis to support plaintiff's claim, the mechanic's lien cannot be enforced.

Examination of this written agreement discloses that, although it contains five pages and goes into considerable detail, it is too indefinite and uncertain in its terms to constitute a sufficient and adequate basis for recovery by plaintiffs.

As stated in Lombardo v. Gasparini Excavating Co., 385 Pa. 388, 393 (1956):

"Furthermore, in order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain."

The written agreement of August 10, 1956, omits many indispensable items which would be necessary in order to enable the contractor to construct a building. The agreement does not show whether the house was to be a single story or a two-story structure. It did not specify the number of bedrooms, or whether or not there was to be a kitchen, a living room or dining

room, the number or kind of windows, the number of closets and electrical outlets and other essential information.

The agreement repeatedly indicates its own incompleteness by referring to "the agreed upon set of plans."

The testimony clearly shows that the parties themselves, in their practical interpretation of the agreement, utilized a standard set of blueprints which was obtained from Mr. Harry L. Berkshire, who operates a lumberyard at Masontown. It is clear from the testimony that plaintiffs' bid was based upon those plans, or "picture" as it was called during the trial.

The testimony likewise clearly shows that plaintiffs relied upon and utilized this plan or "picture" in the course of the construction work which they performed. Repeatedly in his testimony plaintiff, Nick Halowich, referred to the plans in order to explain how the work was done. For example, when asked whether it could be determined from the agreement alone where the kitchen and living room were supposed to be located, the witness replied:

"A. Yes, in the blue print.

"Q. Is that in the agreement?

"A. No, not in the agreement; it is in the blue print

. . .

"Q. The agreement mentions windows?

"A. Yes.

"Q. But it doesn't say how many?

"A. No.

"Q. But it doesn't say where they shall be?

"A. It couldn't say where they shall be in the agreement; you have to go by the blue print to put windows in."

It is therefore abundantly clear that the agreement, standing alone, is too indefinite and uncertain to constitute an enforceable contract. Plaintiffs themselves

were unable to construct the house without supplementing the provisions of the written agreement by reference to the plans.

Under any realistic view of the conduct of the parties in this case, the actual contract between them was not the written agreement standing alone, but the written agreement together with the plans or "picture", as modified and supplemented by oral arrangements calling for certain variations from the blueprint and certain additional extras such as a more expensive type of plumbing fixtures.

But the validity of the mechanic's lien sought to be enforced here depends entirely upon the written agreement alone. Not only did counsel for plaintiffs explicitly disclaim any reliance upon the plans at the trial, but in paragraph 15 of plaintiffs' answer to new matter it was expressly denied that the plans constituting plaintiff's exhibit 1 were part of the agreement between the parties: "Further, it is denied that the 6 room and bath dwelling was to be constructed in accordance with said 'Plans' and 'List' but, on the contrary, the said 6 room and bath dwelling was to be constructed in accordance with Plans and List to be agreed upon by the Parties to said Agreement as the construction of said 6 room dwelling and bath progressed."

Consequently the trial court had no alternative but to grant the nonsuit upon the ground that the written agreement was insufficient, by reason of its being too indefinite and uncertain, to permit plaintiffs to recover: A. L. I. Restatement of the Law of Contracts, §32; 1 Williston on Contracts (3d ed. 1957), §§37, 42.

Nonsuit was also necessitated upon another ground, insofar as the last installment of the contract price, $4,612.50, is concerned. A condition precedent to payment of the last installment of the contract price by defendants had not been performed at the time of the trial.

Paragraph 12e of the written agreement provided for payment of: "A like final amount when the contract has been completed by the second parties and a waiver of lien has been furnished to the first parties by the parties of the second part."

Plaintiff, Nick Halowich, testified that he delivered releases from all subcontractors to his attorney, Mr. Cavalcante. Apparently no release was obtained from the company which furnished the furnace. Since the written agreement did not make time of the essence in delivering these documents to defendants, a tender at the trial would have constituted compliance with the condition precedent so as to mature defendants' contractual liability to pay the final installment. Defendants correctly contend, however, that a belated tender would not be effective insofar as the validity of the mechanic's lien filed by plaintiffs is concerned. As indicated above, the enforceability of such a lien depends upon the existence of a "debt" at the time the lien is filed. If, by reason of plaintiffs' failure to perform a condition precedent, the final installment of the contract price had not ripened as a debt due and payable at the time plaintiffs filed their lien, there could be no recovery in this proceeding, although a belated tender would probably suffice to sustain an action of assumpsit.

Accordingly, the nonsuit was properly granted and should not be taken off.

## Order

And now, December 22, 1958, after consideration and for the reasons stated in the opinion filed herewith, the motion to take off the compulsory nonsuit entered in this case is refused.